**Kelly McNEAL et al.,
Plaintiffs-Appellants,**

v.

**TATE COUNTY SCHOOL DISTRICT
et al., Defendants-Appellees.**

No. 74–2738.

United States Court of Appeals,
Fifth Circuit.

Feb. 12, 1975.

Stanley L. Taylor, Oxford, Miss., Robert J. Kelly, Batesville, Miss., for plaintiffs-appellants.

Roy E. Johnson, Senatobia, Miss., Semmes Luckett, Clarksdale, Miss., Leon E. Hannaford, Senatobia, Miss., for defendants-appellees.

Before THORNBERRY, MORGAN and CLARK, Circuit Judges.

CLARK, Circuit Judge:

The Tate County School system enrolls 3,519 students (2,152 black; 1,367 white) in five schools. Upon court-ordered abolition of freedom of choice in August 1970, the system elected to make pupil assignments to schools in the system based upon residence in one of three zones for elementary and junior high school students, and upon residence in one of two zones for high school students. However, the district also retained a ten-year-old classroom assignment plan for elementary and junior high school students which can best be described as faculty-predicted ability grouping. In this system the teacher evaluates the pupil's past performance and recommends the next year's assignment to the principal, who makes the final decision. Entering first grade students are placed into sections (classrooms) based upon whether they have attended the public preschool program. During the school year students are moved within the sections of their grade if their performance indicates that they were better or worse than initially predicted. High school classes are formed on the basis of student requests following a "first-come, first-served" formula.

The result of this student assignment program has been to produce one to four all-black sections in every elementary (1–6) grade and a few all-white sections in the advanced grades. Because this effect violated the court's initial order enjoining the maintenance of segregated classrooms, the plaintiffs-appellants sought to hold district officials in contempt and to secure further relief barring segregated classrooms and requiring

that the racial ratio in each classroom reflect the ratio in the respective grade.

The following findings were made by the district court. The system was unitary in faculty and staff assignments, transportation and extra curricular activities. The district technically had failed to comply with the earlier order barring segregated classrooms, but should be excused because of a change in the law evidenced by the Supreme Court's allowance of all-black schools in the metropolitan systems of Richmond, Detroit and Memphis.[1] A number of the all-black classrooms were taught by black teachers. Pupil assignments were not based on any specific tests but rather upon a grading of each child's actual performance. It might well be that the segregated classrooms exist "because the black child has not had the advantages which the white child has had." School authorities, who were honestly endeavoring to operate a unitary system affording the very best education possible, were in a better position than the court to determine how their schools should be operated. The court could suggest nothing which would result in better schools for the district—the only alternative being to abandon the present plan and require assignments based on race so as to create a classwide racial balance in each section, which would be educationally detrimental.

■ The court erred in determining that the approach to be taken in adjudging the constitutional permissibility of segregated classrooms had been changed by the recent decisions involving the segregating effects of metropolitan housing patterns upon some school populations in large urban districts. The situations are not comparable. Not only must the attendance zones in such urban areas initially be drawn with racial neutrality, but also the parents of students in those zones retain the right to relocate their residence and students in segregated schools must be granted the right to transfer to schools in which their race is in the minority. On the other hand, segregation caused by ability grouping is fixed. Notwithstanding the fact that tract assignments are made without regard to race, children who have been the victims of educational discrimination in the dual systems of the past may find themselves resegregated in any school in the district solely because they still wear a badge of their old deprivation—underachievement.

■ An analysis of today's issue should begin with articulation of the basic rule that classrooms which are segregated by race are proscribed regardless of the degree of overall schoolwide desegregation achieved. *See* Adams v. Rankin County Board of Education, 484 F.2d 324 (5th Cir. 1973); Boykins v. Fairfield Board of Education, 457 F.2d 1091 (5th Cir. 1972), and Johnson v. Jackson Parish School Board, 423 F.2d 1055 (5th Cir. 1970). The district court finds no breach of this postulate in Tate County because it concludes that individual ability, not race, is the criterion for assignment.

The law of this circuit which bears on ability grouping of students began with dicta.[2] The first decisional mention of

1. Bradley v. School Bd. of Richmond, 462 F.2d 1058 (4th Cir. 1972), aff'd mem. by an equally divided court, 412 U.S. 92, 93 S.Ct. 1952, 36 L.Ed.2d 771 (1974); Milliken v. Bradley, 418 U.S. 717, 94 S.Ct. 3112, 41 L.Ed.2d 1069 (1974); Northcross v. Bd. of Educ. of Memphis City Schools, 489 F.2d 15 (6th Cir. 1973), cert. denied, 416 U.S. 962, 94 S.Ct. 1982, 40 L.Ed.2d 313 (1974).

2. Borders v. Rippy, 247 F.2d 268, 271 (5th Cir. 1957) stated:

Pupils may, of course, be separated according to their degree of advancement or retardation, their ability to learn, on account of their health, or for any other legitimate reason, but each child is entitled to be treated as an individual without regard to his race or color.

Stell v. Savannah-Chatham County Board of Education, 333 F.2d 55, 61–62 (5th Cir. 1964) was to the same effect:

In this connection, it goes without saying that there is no constitutional prohibition against an assignment of individual students to particular schools on a basis of intelligence, achievement or other aptitudes upon a uniformly administered program *but*

student assignments based on a testing of their ability came in a brief ruling in our en banc holding in Singleton v. Jackson Municipal Separate School District, 419 F.2d 1211, 1219 (1969) in particular regard to the Marshall County and Holly Springs School Districts. There we barred the use of testing for school, as opposed to classroom, assignment of pupils in these words:

> We pretermit a discussion of the validity per se of a plan based on testing except to hold that testing cannot be employed in any event until unitary school systems have been established.

Then came the per curiam decision in Lemon v. Bossier Parish School Board, 444 F.2d 1400, 1401 (5th Cir. 1971), which while again refusing to make a per se rule on the validity of student placement into one of two schools based on ability disclosed by testing, stated:

> In *Singleton* we made it clear that regardless of the innate validity of testing, it could not be used until a school district had been established as a unitary system. We think at a minimum this means that the district in question must have for several years operated as a unitary system.

The first consideration of the use of testing as a basis for classroom assignment came in Moses v. Washington Parish School Board, 456 F.2d 1285 (5th Cir. 1972), where the school district was making classroom assignments based upon scores on standardized tests. The result was lower sections which were all-black. The district court found this ability grouping to be violative of equal protection particularly in the slower sections which, in an ironic sort of self-fulfilling prophecy, were taught less and learned less. 330 F.Supp. 1340 (E.D.La.1971). This court's brief order of affirmance found that substantial evidence supported the district court's determination

that ability grouping tended to perpetuate segregated classrooms within Bossier Parish's otherwise desegregated system.

From these holdings, we synthesize the rule for this case to be that the court must assay the present district plan of student assignment which results in racial segregation with a punctilious care, to see that it does not result in perpetuating the effects of past discrimination. Ability grouping, like any other non-racial method of student assignment, is not constitutionally forbidden. Certainly educators are in a better position than courts to appreciate the educational advantages or disadvantages of such a system in a particular school or district. School districts ought to be, and are, free to use such grouping whenever it does not have a racially discriminatory effect. If it does cause segregation, whether in classrooms or in schools, ability grouping may nevertheless be permitted in an otherwise unitary system if the school district can demonstrate that its assignment method is not based on the present results of past segregation or will remedy such results through better educational opportunities.

In the case at bar the fact that such classroom groupings were used in each of the dual systems produced by freedom-of-choice cannot be made a justification for continuation of the practice in zonally integrated schools. In fact, the lack of educational equality would predictably cause students from the inferior system to immediately be resegregated within the lower classroom sections. Many of the segregated black students in this system have never been allowed to attend a unitary school system except under such ability groupings. The testing rationale of both *Singleton* and *Lemon* would bar the use of this method of assignment until the district

---

*race* must not be a factor in making the assignments. However, this is a question for educators and not courts. (Emphasis added.)

*But see* the specific comment overruling the general principle on which these cases were based, in United States v. Jefferson County Board of Education, 380 F.2d 385, 389 (5th Cir. 1967).

has operated as a unitary system without such assignments for a sufficient period of time to assure that the under-achievement of the slower groups is not due to yesterday's educational disparities. Such a bar period may be lifted when the district can show that steps taken to bring disadvantaged students to peer status have ended the educational disadvantages caused by prior segregation.

■ The district court was in error in assuming that its only alternative to approving ability grouping was to command racial balance in every classroom. If the school district cannot substantiate its present system, it may choose any racially neutral method of classroom assignment it considers educationally sound. That method should be approved by the district court unless its effect is racial segregation or is substantially adverse to the quality of education available to some of the district's children. See Arvizu v. Waco Independent School District, 495 F.2d 499 (5th Cir. 1974).

Since Tate County's system results in substantial racial segregation in its classrooms, the defendant school district should be afforded an opportunity to meet the burden of proof established here. In the alternative, the district must submit some other plan of student assignment not based upon race or ability grouping. The district court may then proceed to hold such hearings as it deems necessary to permit interested parties and affected parents to respond. The court's order approving such a plan, as submitted or modified, should be entered no later than May 1, 1975 to become effective with the commencement of the September 1975 school year. The judgment appealed from is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.