572 F.2d 1049
 UNITED STATES of America, Plaintiff-Appellee,
Robert Love and Michelle Boles, by her mother and next
friend Alice Bryant, Interveners-Appellees,
v.
GADSDEN COUNTY SCHOOL DISTRICT et al., Defendants-Appellants.
 No. 76-3537.
 United States Court of Appeals,
Fifth Circuit.
 May 8, 1978.
 
 Brian T. Hayes, C. Graham Carothers, Tallahassee, Fla., for defendants-appellants.
 Anita M. Marshall, Atty., Joseph D. Rich, Civ. Rights Div., U. S. Dept. of Justice, Ed. Sec., Washington, D.C., Kent Spriggs, Tallahassee, Fla., Jack Greenberg, James C. Gray, Jr., New York City, Nicholas P. Geeker, Acting U. S. Atty., Pensacola, Fla., Drew S. Days, III, J. Stanley Pottinger, Asst. Attys. Gen., Frank D. Allen, Jr., Atty., Dept. of Justice, Washington, D.C., for plaintiff-appellee.
 Appeal from the United States District Court for the Northern District of Florida.
 Before BROWN, Chief Judge, AINSWORTH and VANCE, Circuit Judges.
 PER CURIAM:
 
 
 1
 The Gadsden County School Board, which has been operating under a court-imposed desegregation decree since 1970, appeals from an order of the District Court enjoining the use of ability grouping as a method of assigning students to particular classrooms in five elementary schools.[1] We affirm the District Court.
 
 
 2
 The United States initiated this suit in 1970, seeking to eliminate the dual school system in Gadsden County. The issue now before us entered the case in 1975 when plaintiff Michelle Boles intervened as the representative of a class of black students in the school system, alleging that the use of ability grouping perpetuated segregation and thus frustrated the 1970 decree.[2] After a hearing the District Court found that: ability grouping resulted in a concentration of white students in upper sections and black students in lower sections of each grade; (ii) the defendant school board had not met its burden of showing that the assignment method was not based on the present results of past segregation; and (iii) the school board had not shown that ability grouping would remedy the results of past segregation by providing better educational opportunities. On appeal, the school board contends that the degree of racial imbalance in the five elementary schools involved does not rise to the level of segregation and that no inference of discrimination justifying the District Court's order can be drawn.
 
 
 3
 The school board's arguments were answered in the District Court's Memorandum Decision, which is attached in relevant part hereto. We agree with the holding of the District Court and affirm the grant of injunctive relief on the basis of the Court's opinion.
 
 
 4
 AFFIRMED.
 
 APPENDIX
 MEMORANDUM DECISION
 
 5
 This case is an ongoing school desegregation suit commenced by the government in 1970. The present phase of the litigation involves discrimination claims raised by the intervention of two classes represented by intervenors, Love and Boles. The government has actively participated in this portion of the case and generally urges the same relief sought by intervenors. Trial was bifurcated pursuant to agreement of the parties, and questions of liability have been tried by the court without a jury. To the extent issues are not resolved by this decision, they will be resolved in subsequent decision or decisions.
 
 
 6
 II. ABILITY GROUPING.
 
 
 7
 This second class consists of all black students in defendant school system.
 
 
 8
 Intervenors have represented before this court that their motion goes to ability grouping in five elementary schools: Munroe, Chattahoochee, Greensboro, Stewart Street and Havana. They state they have not attacked such practices in the high schools because such are based primarily on the student's choice, in the middle schools because under the data they cannot adequately discern the impact of the grouping, and in the remaining elementary schools because, as they have less than 10% White students, "a substantial degree of segregation is inevitable." While plaintiff makes no such representation, it does not contend that any evidence presented warrants finding that ability practices in any high schools, middle schools or elementary schools with less than 10% White enrollment have a racially discriminatory effect. Nor is there evidence before the court sufficient to support such finding regarding such schools.
 
 
 9
 Thus the court addresses itself to ability practices and their effect insofar as such practices are and have been carried on in the aforementioned five elementary schools.
 
 
 10
 Although ability grouping in some form had been used in one or more of the schools in this district prior to the entry of the August, 1970, order of this court, at or near the time of its entry, virtually every school in the district instituted a method of assigning students to classes within the school on the basis of an estimation of each student's ability. Although the method of ability grouping varies somewhat from school to school, the basic formula is similar. Students, for the most part, are administered standardized test or tests, and the test results along with teacher recommendations are used as a basis for placing students within a given section in a grade within the school.
 
 
 11
 Since the Gadsden County School District is 78% Black in student enrollment, it is to be expected that any ability or achievement method of assigning students to classes within the school would result in some all black sections. Such all black sections, by themselves, would not establish race discrimination.
 
 
 12
 However, the ability grouping method of assignment employed by defendants has, in these five elementary schools, in many instances resulted in a concentration of white students in upper sections and black students in lower sections of each grade.
 
 
 13
 For example, as a result of ability grouping at Munroe Elementary School, which was about 68% Black in 1974-1975, 20 of 29 students enrolled in the first section of the first grade were white; only 1 of the 24 students enrolled in the fourth section of the first grade was white. At the sixth grade level, 20 of 30 students assigned to the first section were white, while only 3 of the 24 students assigned to the fourth section were white. For the school year 1972-1973, out of twenty sections (for all grades) six contained 5 or less white students and four of those sections contained over 50% White students. Under the reports submitted, the white students that year were approximately 32% Of the total enrollment in the school. The latest report filed in the court on March 8, 1976 shows that, with the white percentage of students being slightly increased (310 white out of a total of 891), the number of whites in sections ranged from 0 to 24 and with blacks from 9 to 25. On such report, also, there was one section with no whites, one with 2 whites, one with 3 whites and six with 4 whites.
 
 
 14
 Moreover, in each of the five schools, there is substantial variation in percentage, in the great majority of the sections, of blacks and whites, when compared to the overall black-white percentage ratio in the school and in the section, and in the grade and in the section.
 
 
 15
 Within these five schools, from these statistics, there is similarity of pattern to the extent that the grouping has resulted in a concentration of white students in the upper sections and black students in the lower levels. In many instances, the upper levels are heavily white, and in other instances, the lower sections are all black or virtually all black.
 
 
 16
 From the evidence, the court concludes, and finds, the ability grouping of these defendants in these five schools has caused segregation.
 
 
 17
 The test to be here applied is found in this circuit in McNeal v. Tate County School District, 508 F.2d 1017 (5th Cir. 1975), referred to again in Morales v. Shannon, 516 F.2d 411 (5th Cir. 1975).
 
 
 18
 As the court pointed out in these cases, ability grouping, like any other nonracial method of student assignment, is not constitutionally forbidden. Moreover, educators are in a better position than courts to appreciate the educational advantages or disadvantages of such a system in a particular school or district, and school districts ought to be and are free to use such grouping whenever it does not have a racially discriminatory effect.
 
 Under this holding:
 
 19
 If it does cause segregation, whether in classrooms or in schools, ability grouping may nevertheless be permitted in an otherwise unitary system if the school district can demonstrate that its assignment method is not based on the present results of past segregation or will remedy such results through better educational opportunities.
 
 
 20
 On the record before this court, the defendants, though given that opportunity, have not demonstrated that the assignment method is not based on the present results of past segregation. This method of ability grouping, placed in effect so closely following the 1970 order of this court, appears to be based on the present results of the segregation existing in this school system prior to that time, and the defendants have not shown otherwise.
 
 
 21
 Moreover, the defendants also have not shown that the ability grouping employed in these five schools will remedy such results of past segregation through better educational opportunities.
 
 
 22
 If the grouping had been successful in affording better educational opportunities, it would be reasonable to assume that there was evidence of mobility in student population in that there would be shown movement of students in the lower sections to higher sections or from lower section in one grade to a higher section in the next grade.
 
 
 23
 On the record before the court, while there was some evidence that there was at least some provision made by those in charge of the schools for mobility, nonetheless the evidence before the court fails to disclose that, during these past years when such grouping has been employed, any meaningful number of students moved upward in these group sections, either during the year or from year to year.
 
 
 24
 In reaching the conclusion that the evidence respecting ability grouping in these five schools supports and justifies an inference of discrimination, the court has not overlooked the holding in Morales, supra, that the seventh and eighth grade statistics therein set forth were not so abnormal or unusual in any instance as to justify an inference of discrimination. It distinguishes factually this case. Unlike in Morales, there is here the fact that this method of ability assignment on the evidence before the court started at or about the time of the August 1970 desegregation order of this court and resulted in perpetuation of past discrimination. In addition, the statistical pattern here presented in ability grouping in these five schools is to this court a stronger showing of discrimination than were the statistics reported in Morales. To this court, the statistical pattern here disclosed, though possibly not as strong as the one shown in Moses v. Washington Parish School Board, 330 F.Supp. 1340 (E.D.La.1971), aff'd 456 F.2d 1285 (5th Cir. 1972), falls nonetheless within the purview of that holding. Here there is afforded proper basis for decision that the evidence in these ability grouping patterns justifies and demonstrates such groupings have caused segregation in the classrooms of these five schools.
 
 
 25
 Under the holding in Tate, as the school district here has been given opportunity to and has not substantiated its present ability grouping in these five schools, it should be afforded an opportunity to and may choose any racially neutral method of classroom assignment for them it considers educationally sound. That method should be approved by this court unless its effect is racial segregation or is substantially adverse to the quality of education available to some of the district's children. Under that holding, the defendants here must submit some plan of student assignment not based upon race or ability grouping, and this court may then proceed to hold such hearings that it deems necessary to permit interested parties and affected persons to respond.
 
 
 26
 The defendants will be permitted to leave in effect the ability grouping plans in these five schools for the remainder of this school year so that disruptive effect therein will be avoided. However, this court's order approving such a plan, as submitted or modified, must be entered in time to become effective with the commencement of the September, 1976, school year. Accordingly, the defendants will, by separate order, be required to submit such plan to this court, with copies thereof served upon the government and the intervenors in this suit no later than June 30, 1976. Hearing thereon will be scheduled by this court promptly thereafter.
 
 
 
 [1]
 This Court has also heard two cases involving the demotions of black principals in the Gadsden County School District, Campbell v. Gadsden County District School Board, 5 Cir., 1976, 534 F.2d 650; United States v. Gadsden County School District, 5 Cir., 1976, 539 F.2d 1369
 
 
 [2]
 A second class of plaintiffs, consisting of all persons seeking teaching and administrative positions in the school system, also intervened through their representative, Robert Love, complaining of continuing discrimination in hiring and promotion. The District Court tried this issue with the complaint concerning ability grouping, found that racially discriminatory practices were present, and ordered the school board to take corrective measures. Memorandum Decision, June 3, 1976, as amended, June 17, 1976. R. at 797-803. The school board does not appeal from this order