**Kathy Norris JOHNSON and Loretta Wilcox, individually and on behalf of all others similarly situated, Plaintiffs-Appellants,**

**v.**

**Ben F. SIKES, in his official capacity as Superintendent of the Tattnall County Schools, the Tattnall County School Board, and the Tattnall County School District, Defendants-Appellees.**

No. 82–8439.

United States Court of Appeals, Eleventh Circuit.

April 23, 1984.

Rose E. Firestein, Savannah, Ga., Jonathan A. Zimring, Atlanta, Ga., for plaintiffs-appellants.

J. Franklin Edenfield, Swainsboro, Ga., for defendants-appellees.

Before HILL, VANCE and ANDERSON, Circuit Judges.

JAMES C. HILL, Circuit Judge:

Appellants challenge the Tattnall County School District's requirement that students pass an exit examination to obtain a high school diploma. We dismiss the appeal for lack of ripeness.

## BACKGROUND

The Tattnall County School District ("the District") abolished separate schools for white and black students beginning with the 1970–71 academic year. During the same school year, the District instituted a tracking or ability grouping system for assigning students in the elementary and junior high schools, with the exception of students at Collins High School. The tracking system often resulted in racially identifiable classrooms and was abandoned in 1979–80 as a result of an investigation by the Office of Civil Rights.

In 1976, the Tattnall County School Board adopted a diploma policy requiring that, in addition to successful completion of a certain number of credit hours and sufficient school attendance, each graduating student perform at the ninth grade level (a score of 9.0) on the mathematics and reading portions of the California Achievement Test ("CAT"). As part of the testing requirement, the District instituted remedial courses for those who failed to achieve the requisite score and delayed the imposition of the diploma sanction until Spring, 1978. In 1978, 30 out of a class of 219 students did not obtain the required 9.0 score and, as a result, received certificates of attendance instead of diplomas; seventeen of those who only received certificates were black.

Of the 192 members of the graduating class of 1979, 10 out of the 12 students who did not get a diploma because they failed the CAT were black. In 1980, 6 students out of 192 received certificates of attendance; all six were black.

This action was filed in October, 1979, by appellant Kathy Norris Johnson on behalf of herself and other black students in Tattnall County, Georgia, who have completed, will complete, or are eligible to complete all requirements for high school graduation and receipt of a high school diploma other than achieving a particular score on the CAT. Named as defendants were the Tattnall County School District, the Tattnall County School Board, and Ben F. Sikes, the Superintendent of Schools for Tattnall County. The complaint alleged that the exit examination: discriminates against the plaintiffs because of their race, in violation of the equal protection clause of the fourteenth amendment; is fundamentally unfair and therefore violates the plaintiffs' rights to due process of law as guaranteed by the fourteenth amendment; violates Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d; and violates 20 U.S.C. §§ 1703, 1706.[1] The case was consolidated with a similar case, *Walls v. Banks*, and the district court certified the following classes:

Class 1. All black children who attended, are attending, or will attend public schools in Tattnall County, Georgia, and who have completed, will complete, or are eligible to complete all valid and legal requirements for receipt of a high school diploma established by Defendant Board or the Georgia State Board of Education, but who did not or will not achieve a particular score on the California Achievement Test, and who, as a result of having failed to achieve a certain score on said tests, have been or will be denied a high school diploma by Defendants.

Class 1.a. All black children who have attended, are attending, or will attend public schools in Tattnall County, Georgia, and who have completed, or will complete all requirements for receipt of a high school diploma established by Defendant Board or the Georgia State Board of Education, other than achieving a particular score on the California Achievement Test, and who, solely as a result of having failed to achieve a certain score on said test, have been or will be denied a high school diploma by Defendants.

After trial on the consolidated cases, the district court entered its order of June 17, 1981. *See Anderson v. Banks*, 520 F.Supp. 472 (S.D.Ga.1981). The court held that the plaintiffs prevailed on their equal protection claims and ordered the defendants not to impose the diploma sanction until the graduation of the class of 1983 since that would be the first group of graduating students who began their education after the abolition of the segregated school system. After analyzing the standards set forth in *McNeal v. Tate County School District*, 508 F.2d 1017 (5th Cir.1975), the district court further held that the District could reinstate the diploma sanction in 1983 if it could then show that the increased educational opportunities of the CAT outweigh any lingering causal connection between the discriminatory tracking system and the imposition of the diploma sanction.

The district court also examined the plaintiffs' due process claims in light of *Debra P. v. Turlington*, 644 F.2d 397 (5th Cir.1981), and held that the school authorities had not demonstrated that the CAT was a fair test of the material actually taught in Tattnall County public schools. The defendants filed a motion for reconsideration of the due process portion of the order, arguing that the *Debra P.* decision

---

**1.** The plaintiff was permitted to amend her complaint to add another named plaintiff, to change the class definition, and to add a claim. The new claim, under the fourteenth amendment and section 504 of the Rehabilitation Act, 29 U.S.C. § 794, alleged that the defendants were not administering the exit exam to students classified as Educable Mentally Retarded. Issues concerning the relief afforded to those classified as Educable Mentally Retarded are not raised in this appeal.

was announced after trial and that the decision created a new standard of proof and a shifting of the burden of proof. The court agreed that *Debra P.* changed the applicable law and scheduled an evidentiary hearing to permit the defendants to present additional evidence concerning the match between the CAT and what was actually taught in the classrooms. A second order was issued on June 16, 1982, *see Anderson v. Banks*, 540 F.Supp. 761 (S.D.Ga.1982), holding that the defendants had made a sufficient showing that the CAT is a fair test of the material taught in Tattnall County. A judgment was entered on June 17, 1982, stating that plaintiffs did not prevail on their substantive due process claims.

On appeal, plaintiffs-appellants contend that the district court erred in its ruling of June 17, 1981, on plaintiffs' equal protection claims, and in its order of June 16, 1982, on plaintiffs' due process claims. They argue that the court misinterpreted *McNeal v. Tate County School District* in holding that the school authorities could reestablish the competency test in 1983 if they could then show that the increased educational opportunities of the CAT policy outweigh any lingering causal connection between the discriminatory tracking system and the imposition of the diploma sanction. According to appellants, the District can only reinstate the exam policy if it can show that steps taken to bring disadvantaged students to peer status have ended the educational disadvantages caused by the tracking system. Appellants also maintain that the court erred in holding that the exit exam covered material taught in Tattnall County public schools. They assert that the district court misapplied the test set forth in *Debra P. v. Turlington* for determining whether an exit exam comports with the due process clause of the fourteenth amendment.

## DISCUSSION

In effect, the appellants ask us to announce whether the appellees can reinstate the exit exam at some uncertain future date *if* the appellees choose to reinstitute the test and *if* the appellees are able to demonstrate to the district court that the educational benefits of the testing program outweigh any lingering causal connection between the diploma sanction and the tracking system. Before considering the issues raised by appellants, we must first determine whether these issues are properly before this court. *See Buckley v. Valeo*, 424 U.S. 1, 113–14, 96 S.Ct. 612, 679–680, 46 L.Ed.2d 659 (1976). Prior to oral argument, we requested the parties to brief the issue of the finality and appealability of the district court's orders. Both parties concede that there are still matters to be decided by the district court but contend that the court's rulings constitute a final order as contemplated by 28 U.S.C. § 1291 or, alternatively, an appealable interlocutory denial of an injunction under 28 U.S.C. § 1292(a).[2]

Neither party, however, has addressed whether we should defer decision on the constitutional issues raised by the appellants because the controversy is not ripe for review in light of the absence of a ruling by the district court that the school district may reinstate the exit exam policy. The question of ripeness affects our subject matter jurisdiction, *see International Tape Manufacturers Ass'n v. Gerstein*, 494 F.2d 25, 27 (5th Cir.1974); *Duke City Lumber Co. v. Butz*, 539 F.2d 220, 221 n. 2 (D.C.Cir.1976), *cert. denied*, 429 U.S. 1039, 97 S.Ct. 737, 50 L.Ed.2d 751 (1977), and may be raised *sua sponte* at any time, *Duke City Lumber Co.*, 539 F.2d at 221 n. 2; *In re Grand Jury, April, 1979*, 604 F.2d 69, 72 (10th Cir.1979). Although at oral argument the parties encouraged us to render a decision in this case, "because issues of ripeness involve, at least in part, the existence of a live 'Case or Controversy,' we cannot rely upon concessions of the parties and must determine whether the issues are ripe for decision in the 'Case and Controversy' sense. Further, to the extent that questions of ripeness involve the exer-

---

**2.** Because we hold that this case is not ripe for review, we need not and do not express any view on whether this court would have jurisdiction under 28 U.S.C. §§ 1291 or 1292(a).

cise of judicial restraint from unnecessary decision of constitutional issues, the Court must determine whether to exercise that restraint and cannot be bound by the wishes of the parties." *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 138, 95 S.Ct. 335, 356, 42 L.Ed.2d 320 (1974) (footnotes omitted).

■ The ripeness doctrine involves both jurisdictional limitations imposed by Article III's requirement of a case of controversy and prudential considerations arising from problems of prematurity and abstractness that may present insurmountable obstacles to the exercise of the court's jurisdiction, even though jurisdiction is technically present. *See id.; Socialist Labor Party v. Gilligan*, 406 U.S. 583, 588, 92 S.Ct. 1716, 1719, 32 L.Ed.2d 317 (1972); C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3532, at 237–38 (1975). The basic rationale is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements .... The problem is best seen in a twofold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). Moreover, "since ripeness is peculiarly a question of timing, it is the situation now rather than the situation at the time of the District Court's decision that must govern." *Regional Rail Reorganization Act Cases*, 419 U.S. at 140, 95 S.Ct. at 357.

■ We are convinced that it is preferable for us to defer a decision on the due process and equal protection issues raised in this appeal until the district court enters an order and final judgment permitting the school authorities to reinstitute the test. All students who were denied a diploma because of the exit exam policy have since been awarded a diploma by the Tattnall County School District.[3] Therefore, it is only those future students who may be

given the CAT that would be affected by a review of the district court's rulings. While the parties may feel that it is convenient or desirable for this court to determine in advance if the CAT is a fair test of the materials taught in Tattnall County or if the school district need only show that the exit exam will remedy the results of the tracking system through better educational opportunities, any future harm to the appellants is contingent on uncertain events.

For example, the Tattnall County School District may decide not to reinstate the CAT policy. The District voluntarily chose not to attempt to reinstate the exit exam in 1983. Counsel for appellees stated at oral argument that the school system has no intention of proving that its test will remedy the results of past segregation unless it knows that the district court's announcement of that standard was correct. Appellants have informed us that the Georgia Department of Education is in the process of imposing a similar testing policy across the state; apparently, this statewide testing would supplant the exit exams given by local school districts.

Additionally, even if the District decides to reimpose the CAT, the appellees may be unable to show that the test remedies the results of the tracking system through better educational opportunities. The district court may find that the school system has not sustained their burden of proof and, accordingly, may prevent the appellees from reinstating the diploma sanction.

It is also possible that by the time the appellees decide to reinstitute the CAT they may be able to prove that the school system has completely eliminated all the educational disadvantages caused by the tracking system. In that case, appellees' proof would meet even the more stringent evidentiary burden argued by the appellants.

These examples indicate that the appellants' present claims are based merely on assumed, potential invasions of their consti-

---

**3.** The parties entered into a stipulation in June, 1982, in which the defendants agreed to award diplomas to all students who would have received diplomas in 1978, 1979, 1980, 1981, and 1982, except for their failure to attain a score of at least 9.0 on the CAT.

tutional rights. However, the hypothetical and contingent nature of the questions raised in this appeal counsel against issuing an opinion premised on uncertain and contingent future events that may not occur as anticipated or may not occur at all. *See Federal Election Commission v. Lance,* 635 F.2d 1132, 1138 (5th Cir.) (en banc), *cert. denied,* 453 U.S. 917, 101 S.Ct. 3151, 69 L.Ed.2d 999 (1981). The record in this case does not indicate any injury currently being suffered by the appellants, and the future effect of the district court's rulings is speculative. *See Socialist Labor Party,* 406 U.S. at 589, 92 S.Ct. at 1720. Our decision not to render an opinion advising what the law would be on an assumed set of facts is also consistent with the well-established rule that a court is never to "anticipate a question of constitutional law in advance of the necessity of deciding it." *Ashwander v. TVA,* 297 U.S. 288, 346, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring) (quoting *Liverpool, N.Y. & P.S.S. Co. v. Emigration Commissioners,* 113 U.S. 33, 39, 5 S.Ct. 352, 355, 28 L.Ed. 899 (1885)).[4]

Our dismissal of this appeal does not render impossible any review of the district court's orders of June 17, 1981, and June 16, 1982. If and when the district court is called upon to determine if the CAT may be reinstated and issues a final judgment, then the appropriate party will have an opportunity to have all of the court's rulings reviewed. At that point, unlike now, the school authorities' clear intention to proceed with the CAT, the district court's

permission to reinstitute the diploma sanction, and the evidence that black students in Tattnall County are more likely to fail the test and be denied diplomas would indicate that "injury is certainly impending." *See Regional Rail Reorganization Act Cases,* 419 U.S. at 142, 95 S.Ct. at 358 (quoting *Pennsylvania v. West Virginia,* 262 U.S. 553, 595, 43 S.Ct. 658, 664, 67 L.Ed. 1117 (1923)). Accordingly, because we find that we will be in a "better position later than we are now" to confront any constitutional questions raised by this case, *see Regional Rail Reorganization Act Cases,* 419 U.S. at 145, 95 S.Ct. at 359, we hold that this case is not ripe for appellate review. The appeal is

DISMISSED.

---

**4.** By holding that this appeal is not ripe for review, we do not mean to suggest that it was unwise for the district court to postpone a finding on the remedial benefits of the CAT policy until such time as the school authorities seek to reimpose the test. To the contrary, it appears to us that the district judge's action was wise judicial administration. Indeed, the plaintiff suggested that the district court was in no position in 1981 to assess what the educational situation would be in Tattnall County in 1983. The court's proposed order on the plaintiffs' equal protection claims allowed the reimplementation of the testing program in 1983. The proposed order was sent to the parties for comment. The plaintiffs responded in February, 1981, that it would be premature to determine that by 1983

the defendants will have remedied the educational disadvantages caused by the tracking system. Plaintiffs' Memorandum in Response to Proposed Order. Instead, plaintiffs advised the court to establish objective standards against which the school system's efforts to remedy the results of post segregation could be measured when the defendants propose to reinstitute the CAT. *Id.* Thus, the course chosen by the district court, to announce the burden that the school system must meet if it seeks to reimpose the diploma sanction but to delay a decision on whether the defendants have meet their burden until such time as the defendants propose to begin using the CAT again, is the course suggested by the plaintiffs. *See Anderson v. Banks,* 520 F.Supp. at 503.