[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

———————————————

No. 06-12984

———————————————

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 3, 2007
THOMAS K. KAHN
CLERK

D. C. Docket No. 98-00063 CV-6

SHERNIKA HOLTON,
SPENCER WILSON,
SANDRA MCINTYRE,
MARY HILL,
WILLIE MAE LEWIS,
SHARON BOSTICK,
THE THOMAS COUNTY BRANCH OF THE NAACP,
GLADYS SHOTWELL,
AUDREY LINDER,
LISA WEBB,
JENNIFER HIGHTOWER,
EVELYN WILKERSON,

                                            Plaintiffs-Appellants,

CATHERINE GATLIN, et al.,

                                            Plaintiffs,

     versus

CITY OF THOMASVILLE SCHOOL DISTRICT,

                                            Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

**(July 3, 2007)**

Before EDMONDSON, Chief Judge, TJOFLAT and GIBSON,[*] Circuit Judges.

PER CURIAM:

Plaintiffs, the parents of several black students in the City of Thomasville School District ("the School District") and the Thomas County Branch of the NAACP, appeal the district court's judgment, on remand from this Court, that the School District's program of ability grouping did not violate the Equal Protection Clause of the Fourteenth Amendment or Title VI of the Civil Rights Act of 1964. Because no reversible error has been shown, we affirm.

## I. Background

The sole remaining issue in this school desegregation case -- on appeal for the second time -- is the lawfulness of the School District's policy of "ability

---

[*]Honorable John R. Gibson, United States Circuit Judge for the Eighth Circuit, sitting by designation.

grouping" or "tracking" by which the School District groups students into different academic tracks based on their abilities. The School District has used some form of ability grouping since the end of de jure segregation. Under the School District's program, teachers first group students in kindergarten and elementary school based on their perceived abilities and actual performance. In middle school, students are placed into classes based mainly on standardized exam scores as well as the performance level recommendations of former teachers.[1] At the high school level, students choose their own courses under the direction of teachers, counselors, and parents.

During a lengthy bench trial, the district court made detailed findings of fact about the racial composition of the School District's schools and classes[2] as well as the possible segregative effects of many of the School District's programs and policies, including ability grouping.[3] The district court found that many areas of the School District's operations exhibited racial imbalances but that each of these

---

[1] The School District offered testimony that school officials also attempt to accommodate the requests of parents in making classroom placements.

[2] The district court examined racial disparities in the populations of students, faculty, and staff at each of the schools and several of the classes.

[3] The court looked at several of the District's programs and policies including ability grouping, gifted education, special education, administration of discipline, facilities, transportation, and extracurricular activities.

imbalances was neither traceable to prior de jure segregation nor the result of present intentional discrimination. Thomas County Branch of NAACP v. City of Thomasville Sch. Dist., 299 F. Supp. 2d 1340, 1367 (M.D. Ga. 2004). For each area, the district court determined that demographic and other external factors were the causes of the imbalances. The district court concluded that Plaintiffs had shown no violation of the Fourteenth Amendment or Title VI. Id. at 1367.

In examining ability grouping, the district court found that "a disproportionate number of low income children (most of whom happen to be black) are placed in the lower ability groups" and tend to remain in these lower tracks throughout their academic careers. Id. at 1358. The court determined that this disparity was the result of these students' "impoverished environment" in which "they do not receive the background and support that is often so critical for being ready to learn."[4] Id. The court then concluded that the ability-grouping program did not intentionally segregate or discriminate against students on the basis of race. Id. at 1359.

---

[4]The district court commented that "[w]hen the racial makeup of a community correlates directly with poverty and when poverty correlates with perceived academic readiness, as it does in Thomasville, this 'ability tracking' inevitably leads to ability groups that are racially imbalanced." Thomas County NAACP, 299 F. Supp. 2d at 1359.

4

On an appeal to this Court, we affirmed each aspect of the district court's order except for the findings of fact and conclusions of law on the School District's ability-grouping program. Holton v. City of Thomasville Sch. Dist., 425 F.3d 1325, 1328 (11th Cir. 2005) ("Holton I"). Because the district court focused its analysis on whether the ability-grouping program was intentionally discriminatory, we concluded that the district court had failed to apply the correct legal standard as set out in McNeal v. Tate County Sch. Dist., 508 F.2d 1017, 1020 (5th Cir. 1975). That standard allows a school district to implement ability-grouping programs "in spite of any segregative effect they may have if the assignment method 'is not based on the present results of past segregation or will remedy such results through better educational opportunities." Holton I, 425 F.3d at 1347 (quoting McNeal, 508 F.2d at 1020) (emphasis added). We remanded for the district court to apply the McNeal standard and to make new findings of fact on the School District's ability grouping program.[5] Id. at 1348, 1355.

On remand, the district court acknowledged its earlier lack of complete success in expressing and applying the McNeal standard. The district court then explained that it had earlier determined (1) "that the [racial] imbalances were the

_____

[5]This Court concluded that new findings of fact on the ability-grouping program were necessary -- in the light of the McNeal standard -- because failure to apply the correct standard may have tainted the district court's earlier factual findings. Holton I, 425 F.3d at 1355.

result of the ability-grouping system used by the schools"; (2) "that the children were grouped in that system based on their perceived ability"; and (3) "that this ability was based upon their impoverished circumstances more than anything else and was certainly not traceable to the de jure segregated school system." Although the district court viewed its earlier analysis as having applied the substance of McNeal, the district court this time correctly stated the McNeal standard, adopted and incorporated its previous factual findings, made some additional findings,[6] and applied the McNeal standard to the sum of those findings. The district court concluded that the School District's placement of black children into lower ability groups is not based on the present results of past segregation.

---

[6]The district court also found (1) "that no child attending District schools at the time of trial had ever been enrolled in the District's previous de jure racially segregated system"; and (2) "that the achievement level of the black children in the certified class who have been placed in the lower achievement groups is not a result of the previous de jure segregated school system." Plaintiffs argue that the first finding attempts to reduce McNeal to a "mere counting exercise." That finding, however, was important to the district court's conclusion that the continuous use of ability grouping since the end of de jure segregation did not pose a constitutional problem. In Ga. NAACP v. Georgia, 775 F.2d 1403 (11th Cir. 1985), as in this case, the plaintiffs pointed to the continuous use of ability grouping since the end of de jure segregation as evidence of the perpetuation of de jure segregation. In Ga. NAACP, we recognized that the McNeal court's concern for students who had attended inferior segregated schools was the basis for the court's reasoning that school districts must operate as a "unitary system" for a time before using an ability-grouping scheme that causes racial imbalance. Id. at 1415. That reasoning, we said, does not apply in situations where no student in the current certified class had ever attended a segregated school. Id.

6

## II. Standard of Review

We review a district court's application and interpretation of law <u>de</u> <u>novo</u> and factual findings for clear error. <u>NAACP, Jacksonville Branch v. Duval County Sch.</u>, 273 F.3d 960, 965 (11th Cir. 2001); Fed. R. Civ. P. 52(a). The clear-error standard governs unless the district court "applies an incorrect legal standard which taints or infects its findings of facts." <u>Id.</u> at 965.

## III. Discussion

Plaintiffs argue on appeal (1) that the district court again failed to apply the <u>McNeal</u> standard correctly in reviewing the School District's practice of ability grouping; (2) that the district court failed to make new findings of fact on intentional discrimination as ordered by this Court; and (3) that the ability grouping program is intentionally discriminatory, and the findings to the contrary are clearly erroneous. We conclude (1) that the district court correctly applied the <u>McNeal</u> standard; (2) that the district court complied with our direction to make new factual findings in the light of the <u>McNeal</u> standard; and (3) that the district

7

court did not clearly err by finding that the ability-grouping program was neither intentionally discriminatory nor based on the present results of past segregation.

"A school district's obligation is to eliminate the vestiges of past discrimination 'to the extent practicable.'" Holton I, 425 F.3d at 1337 (citation omitted). If a plaintiff can show that current racial imbalances exist within a school system, "[t]he burden then shifts to the school district to demonstrate that the racial imbalances are 'not the result of present or past discriminatory action on [its] part.'" Id. at 1338 (citation omitted). "The school district bears the burden of showing that any current [racial] imbalance is not traceable, in a proximate way, to the prior [de jure segregated system]." Freeman v. Pitts, 112 S. Ct. 1430, 1448 (1992).

"If the school district can demonstrate that demographic [or other external] factors have 'substantially caused' the racial imbalances in its schools, 'it overcomes the presumption that segregative intent [either past or present] is the cause, and there is no constitutional violation." Holton I, 425 F.3d at 1339 (citation omitted).[7] But, "for a plaintiff to preserve the presumption of de jure segregation [as the cause of the current racial imbalance], the plaintiff must show

---

[7]"The school district need not prove that demographic factors are the sole cause of the imbalances" but must show that these factors are a substantial cause. Holton I, 425 F.3d at 1339.

that the demographic shifts are the result of the prior <u>de jure</u> segregation or some other discriminatory conduct." <u>Id.</u> (citation and quotation marks omitted).

"Although ability-grouping practices may have the <u>effect</u> of creating racial imbalances within classrooms, we have 'consistently stated that ability grouping is not per se unconstitutional.'" <u>Holton I</u>, 425 F.3d at 1346 (citation omitted). Ability-grouping programs "are permissible in spite of any segregative effect they may have if the assignment method 'is not based on the present results of past segregation or will remedy such results through better educational opportunities.'" <u>Id.</u> at 1347 (quoting <u>McNeal</u>, 508 F.2d at 1020).[8]

In this case, the district court correctly applied the <u>McNeal</u> standard on remand by asking whether the School District's method of assignment was based on the present results of past <u>de jure</u> segregation. The district court found that the School District grouped students based on their perceived ability and that the lesser-perceived ability of black students was "based upon impoverished circumstances more than anything." The district court then explicitly found that "the achievement level of the black children in the certified class who have been placed in the lower achievement groups is not a result of the previous <u>de jure</u>

---

[8]The district court did not address -- and the School District does not argue -- whether the ability-grouping program remedies the results of past segregation through better educational opportunities for black students.

segregated school system."[9]  The district court, therefore, found and concluded

that the assignment method of the ability-grouping program is not based on the

present results of past segregation.[10]  Because the district court correctly applied

McNeal, the district court's findings are entitled to substantial deference under the

clear-error standard.  NAACP, Jacksonville, 273 F.3d at 965.

   After reviewing the record, we cannot say that the district court clearly erred

by finding that racial imbalances within the School District's ability-grouping

program are the result of demographic factors (that is, poverty) rather than the

present effects of past de jure segregation.  That the ability-grouping program has

the effect of placing lower-income black students in lower tracks is, by itself,

insufficient to show a constitutional violation.  Holton I, 425 F.3d at 1347.

Plaintiffs have failed to preserve the presumption that these imbalances are the

_____

[9]Plaintiffs argue that the district court's analysis on remand was merely an attempt to explain its earlier erroneous statement and application of the law.  We disagree.  The district court did explain that the substance of its earlier reasoning, in effect, conformed with McNeal.  Even if the district court's explanation was incorrect, the district court then explicitly recognized and applied the McNeal standard, finding that the ability-grouping program was not based on the present results of past de jure segregation.

[10]Plaintiffs have argued that the district court did not comply with our mandate to make new findings on whether the ability-grouping program intentionally discriminates against black students.  We are satisfied with the district court's manner of compliance with our directions.  On remand, the district court stated the McNeal standard accurately and then set out the court's fact findings in the light of the McNeal standard.  That some of these findings were adopted from the district court's earlier opinion and order -- that is, revived -- is acceptable, especially considering the additional findings also made on remand.

10

result of past <u>de jure</u> segregation because Plaintiffs have not shown -- nor have they attempted to show -- that either these students' lesser-perceived abilities or their impoverished circumstances are "the result of the prior <u>de jure</u> segregation or some other discriminatory conduct." <u>Holton I</u>, 425 F.3d at 1339.

Instead, Plaintiffs mainly argue that the ability-grouping program intentionally discriminates against black students and that racial disparities within the program cannot be explained by demographic factors. As support for this argument, Plaintiffs point to some instances in the record of intentional segregation.[11] They also provide some statistical data suggesting that race rather than ability explains many of the black students' lower placements and that demographic factors cannot be the <u>sole</u> cause of racial imbalances within the ability-grouping program.[12]

Evidence in the record, however, supports the district court's findings (1) that the ability-grouping program did not intentionally discriminate against black students; and (2) that a student's lesser-perceived ability was mainly the result of that student's poverty and that such conditions were not the present results of past

---

[11]Plaintiffs point to some evidence in the record of instances of intentional segregation by school officials in making classroom assignments.

[12]Plaintiffs' experts provide some statistical data that -- among students who have similar standardized test scores, prior placements, and socio-economic status -- black students tend to be placed in lower academic groupings while white students are placed in higher levels.

de jure segregation. The School District offered testimony to support its position that teachers and administrators did not use the ability-grouping program to discriminate intentionally against black students. The School District also argued -- and, after weighing the evidence, the district court found -- that the placement of students correlates to their perceived abilities and that socio-economic status is a strong determinant of a student's academic ability.[13] Once again, the School District does not have the burden to prove that demographic factors were the sole cause of the racial imbalances, but rather that such factors were a substantial cause. Holton I, 425 F.3d at 1339. Also, the district court may examine the record as a whole and need not respond to every piece of conflicting evidence. Id. at 1353-54. Thus, because the district court's findings are entitled to substantial deference, we cannot say that the district court clearly erred.[14]

The district court's judgment in favor of the District is, therefore, affirmed.

**AFFIRMED.**

---

[13]The School District presented testimony that the assignment method was, in fact, based on students' perceived abilities as judged by not only standardized tests, but also teachers' perceptions of a student's past and potential classroom performance. Also, testimony from both Plaintiffs' experts and the School District's experts suggests a high correlation between poverty and academic ability.

[14]The Supreme Court has explained that "[a]s the de jure violation becomes more remote in time and demographic changes intervene, it becomes less likely that a current racial imbalance in a school district is a vestige of the prior de jure system." Freeman, 112 S. Ct. at 1448. The district court found that "the effects of the de jure segregated school system had ended before the children in this case ever entered the school." We now conclude that this finding was not clearly erroneous.

12