2025 IL App (1st) 240647-U

No. 1-24-0647

Order filed March 14, 2025

FIFTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| JONATHAN DIBIASE and DEREK GOLAK, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellants, | ) | Cook County. |
| | ) | |
| v. | ) | No. 20 L 7570 |
| | ) | |
| CHICAGO PARK DISTRICT, a municipal | ) | Honorable |
| corporation, | ) | Sandra G. Ramos, |
| | ) | Judge, presiding. |
| Defendant-Appellee. | ) | |

JUSTICE MITCHELL delivered the judgment of the court.
Presiding Justice Mikva and Justice Navarro concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The circuit court's judgment for defendant following a bench trial is reversed and the case remanded for a new trial where the circuit court erred in holding that defendant did not owe a duty of care to plaintiffs and the circuit court made findings of fact that were against the manifest weight of the evidence.

¶ 2    Plaintiffs Jonathan DiBiase and Derek Golak appeal the circuit court's judgment in favor of defendant Chicago Park District after a bench trial in this personal injury case. The issues on appeal are whether (1) the circuit court erred in holding that defendant did not owe plaintiffs a duty of care and (2) the circuit court's findings of fact regarding proximate cause were against the manifest weight of the evidence. For the following reasons, we reverse and remand for a new trial.

¶ 3                                    I. BACKGROUND

¶ 4      In 2014, the Chicago Park District built Steelworkers Park next to Lake Michigan on land formerly occupied by a steel mill. A two-lane road, 87th Street, proceeds west from the park for approximately one half of a mile until it intersects with Lake Shore Drive. Travel on 87th Street just east of Lake Shore Drive is controlled by two metal swing gates. The gates are painted yellow but are rusted. One gate controls eastbound travel towards Steelworkers Park while the other gate controls westbound travel. Each gate is manually operated and is mounted to a single hinge post in the ground. The gates can swing 90 degrees into either an open or closed position.

¶ 5      The street and gates predate the construction of Steelworkers Park and are not owned by defendant Chicago Park District. However, defendant owns the chains and locks welded to the gates that are used to secure the gate in either open or closed positions. When in the closed position, the chain at the end of the gate is locked to another chain attached to concrete bollards located between the westbound and eastbound lanes of 87th Street. When in the open position, the chain at the end of the gate is affixed to a stanchion post located at the side of the street.

¶ 6      Just after midnight on July 6, 2020, plaintiffs Jonathan DiBiase and Derek Golak, both Chicago police officers, were patrolling the area in an unmarked black Ford Crown Victoria. DiBiase was driving while Golak was sitting in the front passenger seat. When they arrived at the gates on 87th Street, DiBiase noticed that the eastbound gate was "wide open." The westbound gate was closed and locked. Because the eastbound gate was open, DiBiase "figured that there were people in the park after [dusk] that shouldn't have been there" and so the officers decided to patrol Steelworkers Park.

¶ 7    Plaintiffs arrived at the park, walked around for 10-15 minutes, and then returned to their vehicle. DiBiase then drove westbound along 87th Street towards the gates. Because the westbound gate was closed, DiBiase decided to exit through the same lane they had entered from, the eastbound lane. DiBiase was driving at approximately 15 miles per hour and was looking straight ahead. The weather was clear and the street was well-lit. Plaintiffs' vehicle collided with the far end of the eastbound gate, which penetrated the vehicle's front windshield and injured plaintiffs.

¶ 8    Plaintiffs filed a complaint against defendant for negligence and willful and wanton conduct. Plaintiffs alleged that defendant had a duty to secure the 87th Street gates and its failure to properly secure the eastbound gate in the open position that night caused the collision and plaintiffs' injuries. After a bench trial, the circuit court entered judgment in favor of defendant on all counts. The circuit court held that plaintiffs failed to establish that: (1) defendant owed them a duty, (2) defendant's action or inaction was the proximate cause of their injuries, and (3) defendant's conduct was willful and wanton. This timely appeal followed. Ill. S. Ct. R. 303 (eff. July 1, 2017).

¶ 9                                    II. ANALYSIS

¶ 10   Plaintiffs argue that the circuit court erred in holding that defendant did not owe plaintiffs a duty of care to secure the gate. To prevail on a negligence claim, a plaintiff must prove by a preponderance of the evidence that: (1) defendant owed plaintiff a duty of care, (2) defendant breached that duty, and (3) that defendant's breach was the proximate cause of plaintiff's injury. *State Farm Fire & Casualty Co. v. Welbourne*, 2017 IL App (3d) 160231, ¶ 15 (citing *Jones v. Chicago HMO Ltd. of Illinois*, 191 Ill. 2d 278, 294 (2000)). Whether a duty exists is a question of law that is reviewed *de novo*. *Krywin v. Chicago Transit Authority*, 238 Ill. 2d 215, 226 (2010).

However, "[q]uestions regarding breach of a duty and proximate cause of the injury are issues of fact, reserved for the trier of fact to decide." *Cooke v. Maxum Sports Bar & Grill, Ltd.*, 2018 IL App (2d) 170249, ¶ 53. A circuit court's findings of fact after a bench trial are only disturbed on review if they are against the manifest weight of the evidence. *Eychaner v. Gross*, 202 Ill. 2d 228, 251 (2002). "A decision is against the manifest weight of the evidence only when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence." *Id.* at 252.

¶ 11     In determining whether a duty exists, the question is whether "the plaintiff and the defendant stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Bogenberger v. Pi Kappa Alpha Corp.*, 2018 IL 120951, ¶ 22. A court's duty analysis is guided by four factors: "(1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant." *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 436-37 (2006). It is undisputed that defendant did not own the gates, street or surrounding land and thus did not owe a duty to plaintiffs under a premises liability theory. However, "[i]t is firmly established in Illinois that a party that creates a dangerous condition will not be relieved of liability because that party does not own or possess the premises upon which the dangerous condition exists." *Corcoran v. Village of Libertyville*, 73 Ill. 2d 316, 324 (1978).

¶ 12     What the circuit court failed to consider is that defendant owed plaintiffs a duty to secure the gate if in fact it was a park district employee who moved the gate into its open position without securing it, thereby creating a dangerous condition. It is reasonably foreseeable that a failure to

secure the gate could lead to the gate swinging into the street and injuring motorists. At trial, Robert Arlow, defendant's Director of Facility Management, testified that the gates were secured for safety reasons:

> "Q. With respect to the gates themselves, whether they are open or closed, you would certainly want them secured so that they don't move, correct? Isn't that true?
> A. I would say that it's an assumption, sure. You want it safe.
> Q. You don't want them swinging around, do you?
> A. No.
> Q. Because, I mean, they could move from wind, mischief, a wide variety of reasons, correct?
> A. I would think so, yes. But I don't assume responsibility for the position of those gates."

Michael Brown, defendant's Deputy Director of the Department of Resources, testified similarly:

> "Q. They would then reapply the chain and lock to the gate in the open position, correct?
> A. Correct.
> Q. And the reason you would do that is because you don't want a gate free swinging, correct?
> A. Correct.
> Q. And that's for safety purposes, right?
> A. Right."

Thomas Snooks, defendant's Deputy Director of Security also testified that the gates were secured for safety reasons:

> "Q. Okay. Because, I mean, you can foresee that it was potentially dangerous if the gate is allowed to swing while traffic is coming through it. It's a potential danger; correct?
> [Defendant's counsel objects but Snooks is told he can answer]
> A. I understand. It's supposed to be locked open or locked closed.
> Q. And the reason for that is safety, is it not?
> A. And – yes."

¶ 13    Further, the magnitude of the burden of guarding against injury and the consequences of placing that burden on defendant are minimal. Defendant would merely be required to act with

reasonable care by ensuring that, if one of defendant's employees unlocks the gate and moves it into its open position, the gate is secured by locking the chain at the end of the gate to the stanchion post. Together, these factors weigh in favor of finding that defendant owed a duty of care to plaintiffs.

¶ 14    The circuit court made no finding in reference to the circumstantial evidence that it was an employee of the Chicago Park District that had opened the gate and failed to secure it. At one point, the circuit court pointed out that there was no evidence that this occurred while the plaintiffs were in Steelworkers Park. At another point, the circuit court assumed that a Chicago Park District employee had opened the gate but concluded that this was not willful and wanton. However, the circuit court failed to determine whether this critical fact existed which, in itself, would have given rise to a duty to secure the gate after it was opened.

¶ 15    The circuit court's error in finding no duty permeated its findings of fact in the balance of its judgment. The other basis for the circuit court's conclusion that plaintiffs failed to establish their negligence claim was that they failed to establish proximate cause. While proximate cause is generally a question of fact, the factors courts consider when determining duty and proximate cause overlap. See *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 394 (2004) ("[T]he question of foreseeability plays a pivotal role not only in the question of the existence of a duty but also in the determination of legal cause ***."); *King v. El Paraiso Del Pacifico, Inc.*, 2024 IL App (2d) 230026, ¶ 30 ("[F]oreseeability is a factor in both duty and proximate cause analyses."); *Shank v. H.C. Fields*, 373 Ill. App. 3d 290, 292 (2007) ("The issues of duty and proximate cause are interrelated ***."). Proximate cause consists of two separate requirements: cause in fact and legal cause. *Beretta*, 213 Ill. 2d at 395. Cause in fact can be established where "there is a reasonable

certainty that a defendant's acts caused the injury." *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 455 (1992). Legal cause is "essentially a question of foreseeability" and whether "the injury is of a type which a reasonable man would see as a likely result of his conduct." *Id.* at 456 (Internal quotation marks omitted.)

¶ 16    In concluding that defendants did not owe plaintiffs a duty, the circuit court found that the injury was not foreseeable: "the foreseeability of this injury occurring is highly unlikely since the surroundings were clear, lighting was ample, the officers had keys to the gates, and an injury like the one at issue has not previously occurred." The very factors that the circuit court considered during its (erroneous) duty analysis, such as foreseeability and the nature of the plaintiffs' injury, were evidentiary matters that it considered when determining whether there was proximate cause:

> "As to legal cause, there is no evidence that Plaintiffs injury is a type, 'that a reasonable person would see as a likely result of his conduct.' In this case, there is no evidence of similar injuries to the Plaintiffs, nor is there *** any affirmative evidence that others had been injured because of the subject gate. *** Furthermore, camera footage at the scene shows that the area surrounding the gates was well-lit with artificial lighting. At a speed of 15-20 mph in a well-lit area, it is difficult to imagine how an injury of this extent would occur."

The circuit court's reasoning seemingly flowed from its legal conclusion that defendant owed plaintiffs no duty even if defendant had opened the gate without securing it.

¶ 17    The circuit court's finding that plaintiffs' injury was not foreseeable is contradicted by the trial evidence. Arlow, Brown, and Snooks each testified that gate was secured for safety reasons. Arlow also testified that it was "a reasonable assumption" that if the gate had been locked in the

open position, plaintiffs' collision would not have occurred. Further, while Snooks testified that during the COVID-19 pandemic he had distributed 50 keys to Chicago Police Department watch commanders throughout the city, there was no evidence that plaintiffs "had keys to the gates" that evening. Additionally, there was evidence that other people had been injured by the gate: defendant's General Foreman of General Trades, Brian Biggane, testified that since 2014, he had received half a dozen calls from defendant's security department concerning allegations that vehicles had collided with the Steelworkers Park gates. Where the circuit court's finding that plaintiffs' injury was not foreseeable was "not based on the evidence" and the "opposite conclusion [was] apparent," its finding that plaintiffs failed to establish legal cause was against the manifest weight of the evidence. *Eychaner*, 202 Ill. 2d at 252.

¶ 18    Further, where the circuit court's findings of fact were tainted by the error in its legal analysis, they are not entitled to deference by a reviewing court. See *Thornburg v. Gingles*, 478 U.S. 30, 79 (1986) (lower court's factual findings that rest on an erroneous view of the law are not entitled to deference by a reviewing court); *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 501 (1984) (same); *Pullman-Standard v. Swint*, 456 U.S. 273, 287 (1982) (same); *Holton v. City of Thomasville School District*, 490 F.3d 1257, 1261 (11th Cir. 2007) (deferential standard of review is not applicable where trial court "applies an incorrect legal standard which taints or infects it findings of facts") (Internal quotation marks omitted.); *Nolan v. Golden Rule Insurance Co.*, 171 F.3d 990, 993 (5th Cir. 1999) ("Though we review the district court's factual findings for clear error, this standard does not insulate factual findings undergirded by an erroneous view of controlling legal principles."); *Corley v. Jackson Police Department*, 566 F.2d 994, 1001-02 (5th Cir. 1978) (where "the district court's application of an incorrect legal standard necessarily tainted

its findings of fact," its findings were not entitled to deferential standard of review); see also *Abbott v. Perez*, 585 U.S. 579, 607 (2018) (holding that where a finding of fact is based on the application of an incorrect burden of proof, "the finding cannot stand").

¶ 19 The circuit court also made other findings contradicted by the evidence. For example, the circuit court found that, in addition to defendant, the Chicago Police Department and Chicago Fire Department possessed keys to the gates' locks. However, the only witness who testified about the fire department's possession of the keys was Snooks, who conceded that he was speculating. The circuit court also found that it "remain[ed] unclear as to whose responsibility ***, whether the Chicago Police Department or Chicago Park District, [it] was to close and secure the park on the evening of" the collision. However, Snooks testified that defendant's landscaping department opens the Steelworkers Park gates and the Chicago Police Department closes them. Therefore, the circuit court's findings that the Chicago Fire Department possessed keys to the gates and that defendant may have had responsibility for closing the Steelworkers Park gates were against the manifest weight of the evidence. *Eychaner*, 202 Ill. 2d at 252 (A decision is against the manifest weight of the evidence if the "opposite conclusion is apparent" or the circuit court's findings are "unreasonable, arbitrary, or not based on the evidence").

¶ 20 A circuit court's factual conclusions after a bench trial are given great deference on appeal. Here, however, the circuit court's factual findings regarding proximate cause followed from its erroneous legal conclusion regarding duty, and the circuit court made factual findings that were contrary to the evidence. Therefore, we reverse and remand for a new trial. Since we are ordering a new trial, we need not consider whether the circuit court was correct in concluding that plaintiffs had failed to establish willful and wanton conduct.

¶ 21                                  III. CONCLUSION

¶ 22     The judgment of the circuit court of Cook County is reversed, and the case remanded for a

new trial.

¶ 23     Reversed and remanded.