Roxanne JONES, Mary Kyser, Perry Varner and Velmer Taylor, Plaintiffs-Appellants,

v.

BOARD OF COMMISSIONERS OF the ALABAMA STATE BAR, et al., Defendants-Appellees.

No. 83-7004.

United States Court of Appeals, Eleventh Circuit.

July 30, 1984.

Rehearing and Rehearing En Banc Denied Sept. 19, 1984.

Rose Mary Sanders, Chestnut, Sanders, Sanders & Turner, Selma, Ala., for plaintiffs-appellants.

Champ Lyons, Jr., Mobile, Ala., William H. Morrow, Jr., Montgomery, Ala., for Bd. of Comms. and individual members of Bd.

L. Drew Redden, Redden, Mills & Clark, Birmingham, Ala., Terry R. Smyly, Asst. Atty. Gen., Montgomery, Ala., for Ala. Supreme Court and individual Justices.

Before KRAVITCH, JOHNSON and HATCHETT, Circuit Judges.

JOHNSON, Circuit Judge:

This is an appeal from the decision of the district court, dismissing plaintiffs' complaint for failure to state a claim upon which relief can be granted. In their action against the Alabama Supreme Court and the justices of the Court and against the Board of Commissioners of the Alabama State Bar and its members, plaintiffs, appellants here, seek declaratory and injunctive relief under 42 U.S.C.A. § 1983 and 28 U.S.C.A. § 2201. Appellants challenge as violative of the Fourteenth Amendment certain rules applicable in the administration of the Alabama bar examination, including the rule limiting to five the number of times that an applicant can sit for the bar examination and the rule granting to those who fail the examination a limited right to review their papers and other passing examination papers.[1]

■ Courts should be reluctant to dismiss a complaint for failure to state a claim upon which relief can be granted. A complaint should not be dismissed on this ground " 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief'." *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Development Corporation,* 711 F.2d 989, 995 (11th Cir.1983) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)). The district court in this case concluded that beyond doubt plaintiffs could not prove facts that would entitle them to relief on any of their claims. This appeal challenges the district court's decision on only three of the grounds relied upon below.[2] We agree with the conclusions of the district court on all three grounds and therefore affirm its decision.

Appellants challenge certain of the Rules Governing Admission to the Alabama State Bar.[3] Specifically, appellants challenge on substantive due process and equal protec-

---

1. Appellants did not raise in this appeal all of the issues presented to and decided by the district court. In addition to the questions here addressed, the district court considered: (1) the claimed violation of the equal protection rights of failing examinees who elect to retake only the multistate portion of the bar examination, on the ground that these individuals must score at least the national median on the multistate examination, while examinees who elect to retake only the essay portion of the examination must score only 70 points and examinees who take both the multistate and the essay portion of the examination also must score only an average of 70 points, and (2) the claimed violation of due process rights from defendants' allegedly unscientific and arbitrary method of scoring the multistate examination.

2. *See* note 1 *supra* and text accompanying notes 4–6 *infra.*

3. The Rules Governing Admission to the Alabama State Bar were adopted by the Board of Commissioners of the Alabama State Bar and approved by the Supreme Court of Alabama.

tion grounds Rule IV D,[4] which limits to five the number of times an applicant can sit for the Alabama bar examination, and on procedural due process grounds the operation together of Rule IV D and Rule VI I(3) (unnumbered paragraph 6),[5] which grants to those who write failing examination papers a limited right to review their papers and other passing papers. Appellants also challenge Rule IV D on the ground that its disproportionate impact on blacks, which occurs in the context of a history of state-sponsored, intentional discrimination against blacks in elementary and secondary education, as well as in Alabama's law schools, violates principles of equal protection.[6] We will discuss these arguments in turn.

### I.

■ Appellants argue that the rule limiting to five the number of times one can sit for the Alabama bar examination violates due process because it creates an irrebuttable presumption of incompetence that operates against all those who fail the bar examination five times. Appellants rely upon the line of Supreme Court decisions, including *Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974); *Vlandis v. Kline*, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973); and *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), in which the Court struck down as violative of due process statutory conclusive presumptions that were not necessarily and universally true but that nevertheless were employed to answer as to all individuals fact questions raised by the statutory scheme in question. Appellants here argue that the fact question of attorney competence is answered for all individuals by the rule that a person who fails the bar examination five times may not retake it, and thus may not become a member of the bar, even though it is not necessarily and universally true that all who fail the bar examination five times would be incompetent attorneys. For the reasons set forth below, we do not agree that the irrebuttable presumption doctrine is applicable in this case.

The Supreme Court in *LaFleur* held unconstitutional rules of the Cleveland County and Chesterfield County boards of education that required pregnant teachers to leave work, respectively, at the end of the fourth and fifth month of pregnancy. 414 U.S. at 644, 94 S.Ct. at 798. The asserted rationale for the mandatory termination rules was the necessity of keeping physically unfit teachers out of the classroom.[7] *Id.*

4. Rule IV D provides:
*There shall be a limit of five times on the number of times an applicant may be examined for admission to the Alabama State Bar;* provided however, an applicant who has failed the examination two times shall not be permitted to sit for another examination before the expiration of eleven (11) months after the preceding examination. An applicant who has failed an examination two times must give satisfactory evidence, on or before the date the applicant applies to be re-examined, that applicant has done additional preparation, whether by additional study, tutorial or otherwise, of the subject or subjects upon which he was unsuccessful.
(emphasis added).

5. Rule VI I(3) (unnumbered paragraph 6) provides:
Within sixty (60) days after the announcement of the results, a failing examinee shall be entitled to examine his/her own papers in the State Bar Headquarters for the purpose of ascertaining that grades were transcribed correctly, and upon payment of $5.00 per section of any essay examination, the examinee will be entitled to receive a copy of the question(s), of his/her answer and the model answer(s), and to examine at Bar Headquarters three top papers on that particular examination.

6. Appellants are four black persons who have graduated from law school and seek to become members of the Alabama State Bar. Only two of the four appellants, Perry Varner, a 1976 graduate of Boston College of Law, and Mary Kyser, a 1978 graduate of Howard Law School, have taken and failed the Alabama bar examination five times. Thus, only Varner and Kyser have standing to raise the issues presented in this appeal. See *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 260–61, 97 S.Ct. 555, 560–61, 50 L.Ed.2d 450 (1977).

7. Another rationale for the rules was the asserted state interest in maintaining the continuity of classroom instruction. While accepting the validity of this state interest, the Court held that

at 643, 94 S.Ct. at 797. Recognizing the validity of the state's concern, the Court nonetheless struck down the rules as a violation of due process because they created "a conclusive presumption that every pregnant teacher who reaches the fifth or sixth month of pregnancy is physically incapable of continuing," *id.* at 644, 94 S.Ct. at 798, despite evidence showing that large numbers of pregnant teachers were fully capable of continuing work longer than the rules allowed. *Id.* at 646, 94 S.Ct. at 799. The Court concluded that the county boards, in raising a fact question, the physical capabilities of pregnant teachers, and then answering the question for all individuals with a conclusive presumption that was "neither 'necessarily [nor] universally true'," violated principles of due process. *Id.* (quoting *Vlandis, supra,* 412 U.S. at 452, 93 S.Ct. at 2236).

Similarly, in *Vlandis,* the Court struck down as a conclusive presumption violative of due process a statutory definition of residency used to fix state university tuition rates. 412 U.S. at 453, 93 S.Ct. at 2237. The Court held that Connecticut could not at once claim to be concerned with residency and at the same time deny to one seeking to meet its test of residency all opportunity to show factors bearing on that issue. *Id.* at 452, 93 S.Ct. at 2236.

Finally, in *Stanley,* the Court found violative of due process an Illinois statute that denied to an unwed father, after the death of the mother, a hearing to determine parental fitness before his children could be declared wards of the state. 405 U.S. at 649, 656–57, 92 S.Ct. at 1211, 1215–16. The law presumed that all unwed fathers were unfit parents. *Id.* at 650, 92 S.Ct. at 1212.

These cases are fully distinguishable from the case at bar. In *LaFleur, Vlandis,* and *Stanley,* the state raised a fact question—physical capability, residency, and parental fitness, respectively—and then by statute answered the question for each individual, denying the opportunity for individuals to present evidence on the question applicable in their own cases. By contrast, the state here raises a fact question—competency to practice law—and gives individuals up to five opportunities to prove their competence. In adopting bar admission requirements, including the bar examination, the state in effect adopts a rebuttable presumption of incompetence, affords applicants five opportunities to rebut the presumption by passing the bar examination, and then essentially adopts as fact as to those individuals who fail the examination five times what it formerly presumed, their incompetency to practice law.[8]

Appellants argue that the state violates due process because it raises the fact question whether all who fail the bar examination five times are competent to practice law, and then it answers the question in the negative for all individuals, who do fail five times, without providing opportunity for proof in an individual case. Appellants' focus is misdirected. The state does not ask whether a bar applicant who fails the

---

no rational relationship existed between the mandatory leave rules and this state interest. 414 U.S. at 643, 94 S.Ct. at 798.

**8.** Appellants incorrectly assert that the Eleventh Circuit recognizes a presumption that applicants for the bar are competent to practice law and that this Court requires the state to rebut that presumption if it is to deny an applicant admission to the bar. Appellants' error is based on their reading of dictum in *Tyler v. Vickery,* 517 F.2d 1089, 1104 (5th Cir.1975), *cert. denied,* 426 U.S. 940, 96 S.Ct. 2660, 49 L.Ed.2d 393 (1976), a decision binding upon this Court. *See* note 11 *infra.* In *Tyler,* a decision discussed in the text accompanying notes 11–12 *infra,* the Court held that a hearing is not required to satisfy the due process rights of a failing bar examinee when

he or she has a right to retake the examination an unlimited number of times. 517 F.2d at 1103. In deciding that the right to retake the examination adequately protected an examinee's interest without unduly burdening the state, the Court made the statement that "unless and until rebutted, failure on a bar examination does not stigmatize an individual as 'incompetent' but merely indicates that he did not demonstrate minimal competence on a particular examination." *Id.* at 1104. This dictum falls far short of a holding that a bar applicant is presumed competent to practice law unless the state rebuts that presumption with evidence of incompetence. Moreover, it does not preclude the analysis we employ here.

bar examination five times is competent to practice law. The state simply asks whether an applicant is competent to practice law, and then it provides the applicant five opportunities to demonstrate his or her competence.[9]

■ Failing in their argument that they have no opportunity to prove their competence, appellants argue that the "five-time rule" violates principles of due process and equal protection because it is not tailored carefully enough to fit the state purpose it is intended to promote. Appellants assert that this Court should apply the strict scrutiny standard of review and determine whether the five-time rule is necessary to achieve a compelling state interest. We disagree. Under both substantive due process and equal protection analysis, the Court must determine whether the rule is rationally related to a legitimate state purpose, and we hold that it is so related.

Appellants argue that the important liberties involved here entitle them to a higher level of scrutiny under the equal protection clause than mere rational basis review. They assert that they have a fundamental right to take the bar examination and to practice law, and that any classification that affects these rights is constitutionally permissible only if it is the least intrusive means of achieving a compelling state interest.

The Supreme Court has applied strict scrutiny analysis to statutory classifica-

tions affecting fundamental rights. *See Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (when classification touches on fundamental right of interstate travel, its constitutionality must be judged by the stricter standard of whether it is necessary to promote a compelling state interest). The Court, however, has never held that the right to pursue a particular occupation is a fundamental right, and it has not applied strict scrutiny review to classifications affecting an individual's pursuit of his or her occupation. On the contrary, in equal protection analysis, the Court has applied the traditional rational basis review to such statutory classifications. *See Shapiro, supra,* at 661, 89 S.Ct. at 1345 (Harlan, J., dissenting) (citing *Williamson v. Lee Optical Co.,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955); *Kotch v. Board of River Pilot Commissioners,* 330 U.S. 552, 67 S.Ct. 910, 91 L.Ed. 1093 (1947)). Other circuits that have considered the question have concluded that, in equal protection analysis, rational basis review is appropriate for classifications affecting applicants for admission to the bar. *See, e.g., Poats v. Givan,* 651 F.2d 495, 500 n. 12 (7th Cir.1981) (per curiam); *Younger v. Colorado State Board of Law Examiners,* 625 F.2d 372, 377 n. 3 (10th Cir.1980); *Lombardi v. Tauro,* 470 F.2d 798, 800–01 n. 4 (1st Cir.1972), *cert. denied,* 412 U.S. 919, 93 S.Ct. 2734, 37 L.Ed.2d 145 (1973). We join these courts in that conclusion.

**9.** In rejecting the irrebuttable presumption doctrine in a challenge to Colorado's rule limiting the number of times applicants can sit for the bar examination, the Tenth Circuit took another approach. See *Younger v. Colorado State Board of Law Examiners,* 625 F.2d 372 (10th Cir.1980). The Court there stated that it was not convinced that a conclusive presumption was involved in the case because no specific fact question was identified and then conclusively determined. *Id.* at 378. Rather, the Court said that the case involved "a general classification policy," with "numerous factors [that] may undergird the line drawn by the Rule." *Id.* (citing *Mogle v. Sevier County School District,* 540 F.2d 478, 485 (10th Cir.1976), *cert. denied,* 429 U.S. 1121, 97 S.Ct. 1157, 51 L.Ed.2d 572 (1977)). The Court decided that application of the conclusive presumption doctrine to invalidate the overall judgment expressed in the rule would be an unwarranted

extension of the holdings of *LaFleur, Vlandis* and *Stanley. Id.* (citing *Weinberger v. Salfi,* 422 U.S. 749, 772, 95 S.Ct. 2457, 2470, 45 L.Ed.2d 522 (1975)). We do not find this a convincing basis for denying application of the conclusive presumption doctrine. No doubt, numerous factors supported the decisions of the school boards in *LaFleur* to adopt the rule requiring pregnant teachers to leave work at a certain point in their pregnancies. The Court nevertheless did not find this an obstacle to application of the conclusive presumption doctrine. Moreover, it seems clear here that the state has raised a fact question for resolution, the competency of individuals seeking to become members of the bar. The difference is that in this case the state gives individuals an opportunity—in fact, five opportunities—to demonstrate their competence, instead of adopting a conclusive presumption applicable to all.

Equal protection analysis thus requires the Court in this case to consider whether the classification here challenged—between those who have failed the Alabama bar examination five times and all others—bears a rational relationship to a legitimate state purpose. *Younger, supra,* at 376–77; *see Weber v. Aetna Casualty & Surety Company,* 406 U.S. 164, 172, 92 S.Ct. 1400, 1405, 31 L.Ed.2d 768 (1972).

Under substantive due process analysis, rational basis review also is appropriate. *Lucero v. Ogden,* 718 F.2d 355, 359 (10th Cir.1983); *Poats, supra,* at 497; *Younger, supra,* at 376. "A state can require high standards of qualification, such as good moral character or proficiency in its law, before it admits an applicant to the bar, but any qualification must have a rational connection with the applicant's fitness or capacity to practice law." *Schware v. Board of Bar Examiners of New Mexico,* 353 U.S. 232, 239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957); *see Konigsberg v. State Bar of California,* 353 U.S. 252, 262, 77 S.Ct. 722, 728, 1 L.Ed.2d 810 (1957).

Thus, in answer to appellants' due process and equal protection challenges to the five-time rule, this Court must decide whether a rational connection exists between the state's interest in ensuring a competent bar and the limitation upon the number of times that an applicant may sit for the bar examination. We note initially that appellants do not challenge the legitimacy of the state's interest. Appellants argue instead that the five-time rule is not rationally related to the state's purpose. They assert that the bar examination itself, not the five-time rule, is the mechanism that separates the competent from the incompetent prospective attorneys. Under appellants' view, if a person would be an incompetent attorney, then he or she will not pass the bar examination, regardless of the number of opportunities afforded for taking it. Similarly, under appellants' view, passage of the examination, regardless of the number of previous attempts, indicates that the successful examinee has attained the required level of competence.

Appellants thus maintain that the rule limiting to five the number of times one can sit for the bar examination has no rational relationship to the state's interest in identifying those who will be competent attorneys.

We do not find this argument convincing. As appellees here note, repeated failure in itself may reflect upon a person's competency to practice law and legitimately may be considered by a state in establishing the standards for admission to its bar. *Poats, supra,* at 499; *Younger, supra,* at 377. Although on this motion to dismiss, evidence was not presented on this point, we note the decisions in *Poats* and *Younger* in which evidence was presented of the extremely low pass rates among those taking a bar examination for the fourth or fifth time. For example, the district court in *Younger,* 482 F.Supp. 1244 (D.Colo.1980), received evidence that pass rates among applicants taking the bar examination for the fourth or fifth time dropped sharply from the rate achieved by first-, second- and even third-timers. *Id.* at 1247. The pass rate for those taking the bar for the first time was 77%. *Id.* From that level, it dropped to 61% for the second time, 46% the third time, and then to 20% the fourth time and 0% the fifth time. *Id.* Similarly, in *Poats, supra,* the Seventh Circuit noted that in recent Indiana bar examinations, the pass rate was about 80% for first-time examinees, while the rate for repeaters was significantly lower.

 Although a person may undertake several periods of intensive study and, after several unsuccessful attempts to pass the bar, become familiar enough with the form of the examination as well as the substantive areas covered by the examination questions to pass the test, a state nevertheless may conclude that this individual has not displayed adequate ability to handle the everyday problems and pressures of a legal practice, where repeated failures, even if ultimately followed by success, can seriously injure the rights and

interests of the public.[10] Thus, we conclude that the limitation on the number of times one can sit for the Alabama bar examination is rationally related to the state's legitimate interest in ensuring the competency of its bar.

## II.

■ Appellants next argue that their rights to procedural due process are infringed by the combined effect of the five-time rule and the rule granting them only a limited right to review their own examination papers. Appellants correctly make no claim to an absolute right to practice law. They claim only a significant interest in practicing their chosen profession and a right to due process before the opportunity to practice is denied them.

The importance of appellants' interest and its entitlement to due process protection has long been recognized. *See Schware v. Board of Bar Examiners of New Mexico*, 353 U.S. 232, 238–39 & n. 5, 77 S.Ct. 752, 755–56 & n. 5 (1957); *Tyler v. Vickery*, 517 F.2d 1089, 1104 (5th Cir.1975), *cert. denied*, 426 U.S. 940, 96 S.Ct. 2660, 49 L.Ed.2d 393 (1976).[11] To decide that an interest merits due process protection, however, is only to begin the analysis; it remains to be decided what process is due. "[W]hether due process requires a particular procedure in a given situation must be determined by balancing the individual's interest in avoiding the loss which lack of the procedure inflicts upon him against the interests which the government seeks to advance by denying it." *Tyler, supra,* at 1104 (citing *Goldberg v. Kelly,* 397 U.S. 254, 262–63, 90 S.Ct. 1011, 1017–18, 25 L.Ed.2d 287 (1970)).

Precedent binding upon this Court already has answered the question whether an applicant for admission to the bar is entitled to a full hearing to contest his or her failing score on the bar examination. In *Tyler,* the Court held that a hearing is not required to satisfy due process when the applicant has a right to retake the examination an unlimited number of times. 517 F.2d at 1103. *See also Lucero v. Ogden,* 718 F.2d 355 (10th Cir.1983). The only question to be determined by a hearing would be "whether a mechanical error had been made in computing the grade or the grade given by the examiner was arbitrary, capricious, and without foundation," and not whether the examiner's evaluation of the paper was "correct," and the Court concluded that, compared to a hearing, reexamination would be a more speedy and at least as effective method for determining whether an error had occurred. *Id.* at 1104. It would be more speedy because, while bar examinations in Georgia are administered biannually, a hearing procedure could subject the examinee to a waiting period much longer than six months before his or her case could be considered. *Id.* Additionally, because the only question on review would be whether mechanical error or arbitrary conduct caused the failing grade and because the chances are so small that the same individual would be subject to the same error or caprice two times, reexamination would be highly effective in detecting error or arbitrariness. *Id.* Moreover, the Court found that the state had a substantial interest in avoiding the tremendous administrative burden that a hearing procedure would impose, especially when the gains realized from this added burden would be so minimal. *Id.* at 1105.

*Tyler,* of course, does not answer the question presented by this case because it involved a rule that permitted applicants unlimited opportunities to retake the exam-

---

**10.** We note, as have other circuits, the irrelevancy to this argument of the fact that selected individuals have been permitted the opportunity to take the bar examination a greater number of times than permitted by the present rule. *See Poats v. Givan,* 651 F.2d 495, 499 (7th Cir.1981) (per curiam); *Younger v. Colorado State Board of Law Examiners,* 625 F.2d 372, 377 (10th Cir. 1980).

**11.** The Eleventh Circuit Court of Appeals has adopted the case law of the former Fifth Circuit handed down as of September 30, 1981, as its governing body of precedent, which is binding unless and until overruled or modified by this Court en banc. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

ination, while the rule challenged here places a five-time limitation on reexamination. Nevertheless, the reasoning of *Tyler* guides our decision here. The factors of speed and administrative burden are the same in this case as in *Tyler*. Alabama, like Georgia, administers the bar examination every six months. The expectation of delay from a procedure that allows each failing examinee a full hearing and the concern over the burden this would impose on the state are equally reasonable here. Thus, the only factor that might weigh differently in this case is the effectiveness of the five-time rule compared to the unlimited-examination rule in detecting grading error and arbitrary conduct.

The extreme improbability that mechanical error or arbitrary conduct would strike the same individual five times ensures the effectiveness of the Alabama rule. The Court in *Tyler* noted that, even making the generous assumption that one out of every one hundred examinees who should pass the examination fails it due to arbitrary grading or error, the chances are only one in a million that the same individual would be the victim of error or caprice in two examinations. 517 F.2d at 1104. In *Poats v. Givan*, 651 F.2d 495 (7th Cir.1981) (per curiam), the Court in upholding against constitutional attack Indiana's four-time examination limitation calculated that the chances are only one in one hundred million that the same individual would be the victim of mechanical or arbitrary error on four examinations. *Id.* at 499. As the district court in this case noted, the probability is staggeringly low that an examinee who received failing scores on the bar examination five different times was each time the victim of error. Thus, even with a five-time limitation, reexamination is a highly effective method of ensuring that mere mechanical error or arbitrary conduct is not responsible for an applicant's failure.

Furthermore, applicants to the Alabama bar are afforded additional protection

against error and caprice. Rule VI I(3), challenged here by appellants, permits examinees to review their own examination papers "for the purpose of ascertaining that grades were transcribed correctly." *Id.*[12]

Therefore, we hold that the rules applicable to the Alabama bar examination, limiting to five the number of times an applicant can sit for the bar examination and granting a limited right to review one's own examination paper, afford applicants adequate due process protections against the possibility that their interests in practicing law will be limited or denied improperly.

### III.

■ Finally, appellants argue that the five-time rule has a racially disparate effect, which when combined with Alabama's history of state-sponsored discrimination against blacks attempting to pursue careers in the law requires this Court to subject the rule to strict scrutiny review under the equal protection clause. Appellants also argue that even if the rule is not per se discriminatory, its disproportionate effect at least discriminates against those black applicants, including appellant Varner, who attended segregated elementary and secondary schools in Alabama and consequently received inferior educations.

Appellants nowhere allege that those who adopted or now administer the five-time rule are chargeable with intentional racial discrimination, and for this reason their facial and applied challenges to the rule must fail. The Supreme Court in *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), held that proof of discriminatory purpose is required to show a violation of the equal protection clause. *Id.* at 242, 96 S.Ct. at 2049. "Disproportionate impact is not irrelevant, but it is not the sole touchstone of an invidious

---

**12.** Rule VI I(3) also allows examinees to review the three top papers written on the particular examination that they took. Thus, examinees are afforded the opportunity to detect their own

substantive errors in their answers to the examination questions, as well as the possible mechanical errors of the examiner.

racial discrimination forbidden by the Constitution. Standing alone, it does not trigger the rule that racial classifications are to be subjected to the strictest scrutiny and are justifiable only by the weightiest of considerations." *Id.* (citations omitted).

Although appellants allege in their brief that Alabama historically subjected to intentional discrimination blacks who attempted to pursue careers in the law, they do not claim that their own efforts to become lawyers were obstructed by intentional racial discrimination. Moreover, we must keep in mind that the challenge raised here is not to those past practices aimed at excluding blacks from the legal profession, but rather to the disproportionate impact on blacks of the present rule that limits the number of times an applicant can sit for the bar examination.[13] Appellants do not allege that this rule was adopted or is maintained for the purpose of discriminating against blacks. Similarly, although appellant Varner alleges that he and other black applicants themselves were subjected to intentional racial discrimination in Alabama by virtue of their attendance of segregated elementary and secondary schools, he does not here challenge that past discrimination, but rather the effect on him of the five-time rule.

Finally, appellants allege that when the five-time rule was adopted, appellees knew or should have known that the rule would have a racially discriminatory impact. This allegation also is insufficient to support an equal protection claim. In *Personnel Administrator of Massachusetts v. Feeney,* 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979), the Supreme Court held that to prove a violation of the equal protection clause, plaintiffs must show that the challenged action was "taken at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Id.* at 279, 99 S.Ct. at 2296. Appellants here make no charge that appellees adopted the five-time rule even in part

because of its discriminatory impact on blacks.

### IV.

Our careful consideration of the arguments raised in this appeal leads us to conclude that the district court properly determined that appellants could prove no set of facts that would entitle them to relief. Its decision to dismiss the complaint for failure to state a claim upon which relief can be granted, therefore, is AFFIRMED.

HATCHETT, Circuit Judge, dissenting:

I respectfully dissent.

One matter is of utmost importance in this case: This case was dismissed without appellants having the opportunity to prove facts in support of their claims. The type of statistical data developed in other cases, cited by the majority, to support the presumptions in those cases from other circuits, is absent from this record. The district court and the majority rule that the five-time incompetence presumption is valid without consideration of statistical, expert, or other evidence. We do not know what has been the result of the five-time limitation rule and the limited review provision. We must ask: Would a two-time examination limitation with limited review be constitutional? Under the majority's analysis, since facts are not important, any maximum number of times set by Alabama Bar officials for taking the Alabama Bar Examination with a limited right of review would be constitutional. Clearly, this case should not have been dismissed on its complaint. A finding of no violation of due process, like any other finding, must be based on facts developed, argued, and analyzed.

My position in this case is simply stated and supported by all of the law on the subject: Applicants who fail a state's bar examination must have either the right to full review of their examinations (a hear-

---

**13.** We also note that appellants here do not make an argument based on *McNeal v. Tate County School District,* 508 F.2d 1017 (5th Cir.

1975), such as this Court recently considered in *Debra P. by Irene P. v. Turlington,* 730 F.2d 1405 (11th Cir.1984).

ing), or have the right to unlimited times to retake the examination.[1]

I dissent from the majority opinion because the limited right of review granted to Alabama bar applicants, combined with the five-time limitation on taking the bar examination, violates due process. The majority bases its holding of no violation of due process on a misinterpretation of *Tyler v. Vickery*, 517 F.2d 1089 (5th Cir.1975), *cert. denied*, 426 U.S. 940, 96 S.Ct. 2660, 49 L.Ed.2d 393 (1976).

In *Brewer v. Wegmann*, 691 F.2d 216 (5th Cir.1982), the Fifth Circuit clarified its reasoning in *Tyler* by holding that the Louisiana Bar examination procedure prohibiting failing applicants from obtaining review of their examinations satisfied due process requirements because the applicants had an unqualified right to retake the examination. The *Brewer* court concluded that *Tyler's* holding that an unqualified right to retake the bar examination constitutes an adequate substitute for a due process hearing controlled its decision. *Brewer*, 691 F.2d at 217. While other circuits

have followed the Fifth Circuit's rationale, the majority today deviates from this binding precedent.

In *Whitfield v. Illinois Board of Law Examiners*, 504 F.2d 474 (7th Cir.1974), the Seventh Circuit held that procedural due process did not require that a bar applicant be permitted to see his examination papers and compare them with others and model answers where he had the right to retake the examination. *Whitfield*, 504 F.2d at 476–78. In *Whitfield*, besides being entitled to retake the examination, the bar applicant could also discuss his performance with one of the examiners. The Seventh Circuit held that "[g]iven the availability of these alternative procedures," the applicant was not entitled to see his examination papers and compare them with model answers. *Whitfield*, 504 F.2d at 477–78. In *Poats v. Givan*, 651 F.2d 495 (7th Cir.1981), the Seventh Circuit reaffirmed its holding that the possibility of reexamination satisfies due process. *Poats*, 651 F.2d at 497.

In *Lucero v. Ogden*, 718 F.2d 355 (10th Cir.1983), *cert. denied*, —— U.S. ——, 104

1. It is apparent that Alabama has simply not stayed abreast of the developing law in this area. A review of the rules from the other two states in this circuit show Florida and Georgia have both brought their rules in compliance with controlling law.

Article 6, section 9 of the Florida Bar Admission Rules provides:

Section 9. (a) An applicant must successfully complete the General Bar Examination and the Multistate Professional Responsibility Examination (MPRE) within 25 months from first submitting to any portion of the examination in Florida. An applicant who fails four times to pass any part of the General Bar Examination or who fails to pass both the General Bar Examination and the Multistate Professional Responsibility Examination (MPRE) within 25 months shall be ineligible to sit for any part of the examination until the passage of at least 1 administration of the General Bar Examination and the Multistate Professional Responsibility Examination (MPRE) from the close of the 25-month period. At the end of that period, the applicant must again successfully complete the General Bar Examination and the Multistate Professional Responsibility Examination (MPRE) in their entirety regardless of whether a part has been successfully completed in the past.

Although the state of Georgia allows only a limited review of examination papers, *its rules do not limit the number of times an applicant may take the examination.* The pertinent rule regarding review provides:

Section 16. Review of Examination Papers. Neither the Board of Bar Examiners nor any member thereof shall conduct post examination interviews with applicants nor shall applicants' papers be retained beyond the commencement date of the succeeding examination. The Director of Bar Admissions may conduct post examination interviews with applicants but he shall not review individual questions or answers with an applicant, nor shall he allow inspection of either questions or answers following the giving of an examination; provided, however, that an applicant may make duplicate copies of his answers at the time of taking the examination and may retain copies of questions with the exception of questions on that portion of any examination prepared for the Board by or under the supervision of the National Conference of Bar Examiners.

Supreme Court of Georgia Rules Governing Admission to the Practice of Law as Approved April 24, 1984.

S.Ct. 1308, 79 L.Ed.2d 706 (1984), the Tenth Circuit upheld the Colorado rule barring review of a bar applicant's results, but permitting an applicant an absolute right to retake the bar examination for an unlimited number of times. The Tenth Circuit held that the absolute unqualified right to retake the examination constituted an adequate substitute for a due process hearing. *Lucero,* 718 F.2d at 359. *See also Singleton v. Louisiana State Bar Association,* 413 F.Supp. 1092 (E.D.La.1976) (the district court upheld the Louisiana Bar rule prohibiting a post-examination review of failing papers. The district court relied on the Louisiana Bar rules providing liberal standards for retaking the bar examination).

The above cases illustrate the majority's incorrect reading of *Tyler v. Vickery.* Where an unlimited right to retake the bar examination exists, due process is satisfied although the rules bar a full hearing. If, however, no unlimited right to retake the bar examination exists, a due process hearing must be held because the mechanism providing a substitute for the due process hearing no longer exists. In this case, an Alabama Bar applicant who has failed the bar examination five times cannot retake the examination. The applicant's right to review consists of reviewing his paper, the three top papers, and the model answers. Without a right to retake the examination, this limited review fails to satisfy due process.[2]

The Seventh Circuit has held that "merely seeing [an] examination or comparing it with others" fails to satisfy due process. *Whitfield,* 504 F.2d at 478. That court further held that due process could only be satisfied if the applicant could "confront the bar examiners and obtain from them explanations of their grades." *Whitfield,* 504 F.2d at 478 (footnote omitted). While in *Whitfield,* the Seventh Circuit held that no due process hearing was required because a right to retake the examination existed, its rationale applies to the instant case where no right to retake the examination after failing it five times exists. The applicant must be able to discuss his examination with the bar examiners and attempt to obtain an explanation of the grades. *See Richardson v. McFadden,* 540 F.2d 744 (4th Cir.1976), *on rehearing en banc,* 563 F.2d 1130 (4th Cir.1977), *cert. denied,* 435 U.S. 968, 98 S.Ct. 1606, 56 L.Ed.2d 59 (1978) (reexamination may not be a more effective remedy than a due process hearing).

Since no unlimited right to retake a bar examination exists in this case, I dissent from the majority's holding that the limited right of review for an Alabama Bar applicant who has failed the examination five times satisfies due process. Without an absolute right to retake the examination, due process mandates a broader review procedure.

Most regrettably, the majority takes the Supreme Court holding in *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), which held that "disproportionate impact ... standing alone, ... does not trigger the rule that racial classifications are to be subjected to the strictest scrutiny" to justify denial of the appellants' claims on the ground that they did not allege that those who adopted and now administer the five-time rule are chargeable with intentional racial discrimination. Of course, they have made no such charge; no such charge can ever be made. Because present officials cannot be charged with past intentional discrimination does not mean that a court need not consider the effects of past intentional discrimination upon applicants in competitive endeavors. In fact, this circuit has long considered as relevant disparate impact due to past intentional discrimination.[3]

In *Debra P. By Irene P. v. Turlington,* 730 F.2d 1405 (11th Cir.1984), the Eleventh

---

2. In passing it is worth noting that review of the "top three papers" is useless. For comparison purposes, the three papers above the pass-fail cut-off line are crucial.

Experience in these matters teaches me that oftentimes 50 to 60 applicants will fail or pass on differences of less than 1 point.

3. The appellant Varner clearly alleges that past intentional racial discrimination in Alabama has caused a disproportionate impact on him of

Circuit affirmed a district court's holding that the Florida Functional Literacy Examination could be used as a diploma sanction only after 1982. The district court had issued a four-year injunction against the test for two reasons. The reason relevant to this case is that the students in the high school class of 1983 would be the first to have attended physically integrated schools for all twelve years of their educational careers. We held that use of the test as a diploma sanction would be permissible only if the state satisfied the test set forth in *McNeal v. Tate County School District*, 508 F.2d 1017 (5th Cir.1975). The state had to demonstrate either (1) that the disproportionate failure of blacks was not caused by the present effects of past intentional segregation, or (2) that the use of the test as a diploma sanction would remedy those effects. *McNeal*, 508 F.2d at 1020; *Debra P.*, 730 F.2d at 1414. Under Eleventh Circuit precedent, this test should have been utilized in this case in determining whether the Alabama Bar Examination rule is constitutional in light of its disproportionate impact on blacks due to past intentional discrimination. The appellants were ready to prove that a disproportionate number of blacks fail the Alabama Bar examination, and therefore, the *McNeal* test should have been applied to developed facts. Instead, the district court and the majority accept a five-time examination rule as constitutionally adequate (without review procedures) because Alabama Bar officials say so. The appellants' serious constitutional claims, supported by an abundance of case law, are summarily dismissed.[4]

Hatchett, Circuit Judge, dissented and filed opinion.

Alabama's five-time rule. Clearly, this claim should not have been dismissed without any evidence being taken.

4. Aside from the dictates of case law, states now allow unlimited times to take bar examinations because they realize the frivolity in an argument asserting that one who passes an examination on the fifth attempt is competent to represent the public, but one who passes an examination on a sixth attempt is not competent to represent the public. When such an argument is made in the shadow of a history where no bar examination was required for many years, or graduation from an accredited law school is not required for the practice of law, such an argument becomes even more frivolous.