John R. PIERCE, Plaintiff,

v.

The ALABAMA BOARD OF OPTOMETRY, etc.; et al., Defendants.

Civ. A. No. 87–T–867–N.

United States District Court, M.D. Alabama, N.D.

March 2, 1993.

James C. Pino, Mitchell, Green, Pino & Medaris, P.C., Alabaster, AL, for plaintiff.

Robert D. Segall, J. Fairley McDonald, III, Copeland, Franco, Screws & Gill, Montgomery, AL, for defendants.

### MEMORANDUM OPINION

MYRON H. THOMPSON, Chief Judge.

In this lawsuit, plaintiff John R. Pierce claims that the Alabama Board of Optometry's refusal to issue him an optometry license violates various rights he has under the United States Constitution—in particular, the rights conferred by the due process clause, the equal protection clause, and the privileges and immunities clause of the fourteenth amendment.[1] Pierce has brought this lawsuit based on 42 U.S.C.A. § 1983 and has invoked the court's jurisdiction based on 28 U.S.C.A. § 1343. He has named the Optometry Board and its members as defendants. Based on the evidence presented by the parties, the court concludes that Pierce's claim lacks merit.

### I. BACKGROUND

Pierce is a graduate of a three-year optometry curriculum and was licensed to practice optometry in the state of Oregon in 1963. Between 1963 and 1970, he was engaged primarily in teaching at various universities, though he did engage in the private practice of optometry when his teaching duties allowed him. The relevant events leading up to the filing of this lawsuit may be summarized chronologically as follows.

---

1. In his complaint, Pierce also bases his claim on freedom of association and freedom to travel. These theories were not, however, pursued in the pretrial order.

*1970.* Pierce moved from Bloomington, Indiana, where he had been a professor at Indiana University, to Birmingham, Alabama to join the faculty at the newly formed School of Optometry at the University of Alabama at Birmingham. The school provided for a four-year curriculum in optometry. The Alabama Optometry Board issued one-year temporary licenses to Pierce and all other members of the faculty who did not possess Alabama optometry licenses. A temporary license authorized a faculty member to teach and to practice optometry under the auspices of the school; the license, however, was valid and subject to yearly renewal only so long as the recipient was a member of the school's faculty. Pierce did not seek a regular license which would have allowed him, subject to yearly renewal, to practice in general throughout the state.

*1975.* The state of Alabama modified its laws governing the practice of optometry. The significant changes in the licensing requirements included changing the education requirement from a three-year to a four-year

school curriculum.[2] The law, however, contained a "grandfather clause," which provided that those seeking the required yearly renewal of their licenses under the new law would not have to meet the new curriculum requirement if they possessed valid regular licenses under the old law.[3] Because Pierce did not have a regular license when the 1975 law went into effect he did not fall within the coverage of the grandfather provision.

*1978.* Pierce applied for a regular optometry license, claiming that the Alabama Optometry Board was obligated to issue him a license because there was "reciprocity" between Alabama and Oregon, where he had already been licensed. Alabama's reciprocity statute provided that the standards under which the applicant secured his license from the other state must at least equal those prevailing in Alabama at the time of the application.[4] The Alabama Board refused Pierce's application because the standards under which he had secured his license in Oregon in 1963 did not equal the standards

---

2. Section 34–22–20 of the 1975 Code of Alabama provided in part as follows:

"Such applicant must be 19 years of age, or over, a citizen of the United States and of good moral character. Each applicant must have a preliminary education of at least four years of high school or the equivalent and be a graduate thereof and a minimum of three years of preoptometry, or the equivalent thereof, at an accredited college or university and *must have completed a course of study in an accredited school or college of optometry which is approved by the board and requires at least four years of professional study* and must be able to pass the standard examination prescribed by the board. Such standard examination shall consist of tests in practical, theoretical and physiological optics, in theoretical and practical optometry, orthoptics, ocular anatomy, physiology, pharmacology, pathology, general anatomy and hygiene and such other knowledge as the board deems essential to the practice of optometry. Such standard examination shall not be out of keeping with the established teaching and recognized textbooks of accredited schools or colleges of optometry."
(Emphasis added).

3. Section 34–22–20 of the 1975 Code of Alabama provided in part as follows:

"Those persons who hold valid licenses to practice optometry in the state of Alabama on October 10, 1975, shall continue to be so licensed after October 10, 1975, regardless of whether they are otherwise qualified to secure

a license under the provisions of this chapter; provided, that they shall be subject to all other provisions of this chapter."

4. In 1978, § 34–22–21 of the 1975 Code of Alabama provided:

"Any person who has successfully passed a standard examination in optometry in any state of the United States or all parts of the examination given by the national board of examiners in optometry and is the holder of a certificate to that effect, issued by the board of such state, or by said national board, and has conducted an ethical professional practice of optometry for at least one year next prior may, at the discretion of the board, under rules and regulations prescribed by the board and upon application to the board, upon the payment of the amount of the regular examination fee, be issued a license and license certificate without examination and be registered as qualified to practice optometry in this state; provided, *that the standard of qualifications and examination under which he secured such certificate to practice was at least as high as that prevailing in Alabama at the time his making application to be so registered;* and, provided further, that said applicant has not failed in an examination in optometry before the state board of optometry or the Alabama board of optometry and that the state from which such applicant comes grants like privileges to persons who have passed the examination of the board."
(Emphasis added.)

for licensing in Alabama at the time he made his application in 1978. At the time Pierce secured his Oregon license, that state required only a three-year educational curriculum; whereas Alabama now required a four-year curriculum.

*1985–86.* Pierce applied again for a regular Alabama license. The Alabama Board rejected his application for the same reasons given in 1978. The Board also found that, because he did not possess a regular license in 1975, he was not eligible under the grandfather clause in the 1975 law.

## II. DISCUSSION

The court understands that Pierce is attacking the following aspects in Alabama's scheme for licensing optometrists: (1) the requirement that applicants have completed optometry schools with four-year curriculums; (2) the reciprocity requirement that the standards under which the applicant secured his license from the other state must at least equal those prevailing in Alabama at the time of the application; and (3) the fact that the grandfather clause applied to only those holding regular Alabama licenses and not to those holding teaching licenses in 1975.

### A. Privileges and Immunities Clause

First, the court rejects Pierce's contention that the Optometry Board's refusal to grant him a license violates the privileges and immunities clause of the United States Constitution. The clause provides that the "Citizens of each State shall be entitled to all the Privileges and Immunities of Citizens in the several States." U.S. Const. Art. IV, § 2. The clause seeks to assure nonresidents of a state the same privileges and immunities as those enjoyed by residents. *Supreme Court of Virginia v. Friedman,* 487 U.S. 59, 64–65, 108 S.Ct. 2260, 2264, 101 L.Ed.2d 56 (1988). A state restriction would violate the clause only if, first, the restriction covers an activity "sufficiently basic to the livelihood of the Nation that States may not interfere with a nonresident's participation therein without similarly interfering with a resident's participation," *Baldwin v. Fish & Game Com'n of Mont.,* 436 U.S. 371, 388, 98 S.Ct. 1852, 1863, 56 L.Ed.2d 354 (1978)—that is, the activity bears on the "vitality of the Nation as a single entity," *id.,* at 383, 98 S.Ct. at 1860; *and,* second, "the restriction is not closely related to the advancement of a substantial state interest." *Friedman,* 487 U.S. at 65, 108 S.Ct. at 2264.

Pierce argues that, although Alabama's statutory scheme for licensing optometrists has no provisions regarding the residency of applicants, the regulations and rules promulgated by the Optometry Board restrict reciprocity to residents. He correctly notes that Board Rule 630–X–10–.01 requires that applicants for reciprocity must be residents of Alabama or they must file affidavits that they intend to become residents. Pierce's claim under the privileges and immunities clause must fail for several interrelated but basic reasons.

First, Pierce overlooks a fundamental fact. The Optometry Board did not seek to deny him an optometry license because of his residency or nonresidency. Instead, the Board contends that he was not eligible for a license because he did not meet the educational requirements of the law, because the standards under which he had secured his license in Oregon in 1963 did not equal the standards for licensing in Alabama at the time he made his application in 1978, and because he could not satisfy the requirements of the grandfather clause in the law. His residency was not a factor. Or to put it another way, although the rules promulgated by the Optometry Board condition reciprocity on residence, the specific regulations precluding Pierce from receiving a license apply to both residents and nonresidents alike. *See Schumacher v. Nix,* 965 F.2d 1262, 1265 n. 4 (3rd Cir.1992) (plaintiffs' claims lack merit because residents and nonresidents must meet same requirements), *cert. denied,* —— U.S. ——, 113 S.Ct. 1252, 122 L.Ed.2d 651 (1993); *Georgia Ass'n of Realtors, Inc. v. Alabama Real Estate Com'n,* 748 F.Supp. 1487, 1492 (M.D.Ala.1990) (same). Indeed, the facts of this case tellingly prove this to be true because Pierce is complaining not as a non-resident but as a resident of Alabama. In addition, Pierce cannot seek protection from the privileges and immunities clause because the clause protects only

nonresidents and Pierce is a resident. In *Slaughter–House Cases,* 83 U.S. 36, 16 Wall. 36, 21 L.Ed. 394 (1872), the Supreme Court indicated that the privileges and immunities clause provides "no security for the citizen of the State in which [the privileges] were claimed," *id.* at 77, 16 Wall. at 77, that is, the clause does not "profess to control the power of the State governments over the rights of its own citizens." *Id. See also United Bldg. and Const. v. Mayor and Council of Camden,* 465 U.S. 208, 217, 104 S.Ct. 1020, 1027, 79 L.Ed.2d 249 (1984) (reaffirming that privileges and immunities clause protects nonresidents not residents); *In re proceedings by Merrill Lynch Relocation Management, Inc.,* 812 F.2d 1116, 1122 n. 6 (9th Cir.1987) (same); *Goldfarb v. Supreme Court of Virginia,* 766 F.2d 859, 864–65 (1985) (same), *cert. denied,* 474 U.S. 1086, 106 S.Ct. 862, 88 L.Ed.2d 901 (1986). Finally, that Pierce's reliance on the privileges and immunities clause is completely misplaced is evident from the fact that, if the court were to strike down the residency requirement in the Optometry Board's rules and regulations, Pierce would not be helped; he would still have been ineligible for a license for the reasons given by the Board.

### B. Due Process and Equal Protection

#### 1.

█ Pierce's challenge under the due process and equal protection clauses of the fourteenth amendment is controlled by the decision of the Eleventh Circuit Court of Appeals in *Jones v. Board of Com'rs of Ala. State Bar,* 737 F.2d 996 (11th Cir.1984). There the appellate court considered substantive due process and equal protection challenges to certain procedures used by the Alabama State Bar to determine whether persons should be allowed to practice law in the state. Although admittedly a due process analysis and an equal protection analysis differ in that with the former the issue is whether the state has acted arbitrarily toward the plaintiff himself and with the latter the issue is whether the state has treated or classified the plaintiff differently from others for arbitrary reasons, the issue still comes down to whether the state has acted rationally or arbitrarily. In *Jones,* therefore, the court

concluded that "Under both substantive due process and equal protection analysis, the Court must determine whether the rule is rationally related to a legitimate state purpose." *Id.* at 1001. *See also Schumacher v. Nix,* 965 F.2d at 1266–69. Indeed, in his briefs filed with the court, Pierce admits that this is the applicable standard here.

█ Under this standard, because the court must give deference "to legislative determinations as to the desirability of particular statutory discriminations," *City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976), "rational distinctions may be made with substantially less than mathematical exactitude," *id.* at 303, 96 S.Ct. at 1517. "[T]he judiciary may not sit as a super-legislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights not proceed along suspect lines." *Id.* For these reasons, the standard is met "if any state of facts reasonably may be conceived to justify" the challenged state determination. *Sullivan v. Stroop,* 496 U.S. 478, 485, 110 S.Ct. 2499, 2504, 110 L.Ed.2d 438 (1990) (citation and internal quotation marks omitted).

Pierce does not question that the state of Alabama has a legitimate interest in who should practice optometry in the state. As the Supreme Court stated in *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 792, 95 S.Ct. 2004, 2016, 44 L.Ed.2d 572 (1975),

> "We recognize that the States have a compelling interest in the practice of professions within their boundaries, and that as part of their power to protect the public health, safety, and other valid interests they have broad power to establish standards for licensing practitioners and regulating the practice of professions."

The determinative issue, therefore, is whether the restrictions challenged by Pierce in this litigation are rationally related to this legitimate interest.

#### 2.

█ Pierce argues that the state of Alabama's requirement of a four-year curriculum is illogical and unrelated to its interest in

the regulation of the practice of optometry. Pierce faults the state for not having taken into consideration that he has had experiences and other education—including teaching and participation in summer education programs—which meet or exceed a formal four-year program. It may very well be true that Pierce is as competent as—indeed, in the court's view he is probably substantially more competent than—the average person licensed to practice optometry in Alabama. Nevertheless, this observation does not lead to the conclusion that Alabama's means for measuring competency—completion of a four-year curriculum—is constitutionally flawed. The question is not whether there are reasonable alternative means to measure what is sought to be measured; indeed, because competency to practice a profession is by its nature a subjective determination, there will almost always be reasonable alternative means. The question instead is whether the means actually chosen are reasonable or rational. *See Giannini v. Real,* 911 F.2d 354, 358 (9th Cir.) ("California has the right to make its [attorneys' admission] examination more comprehensive and difficult than other states"), *cert. denied,* 498 U.S. 1012, 111 S.Ct. 580, 112 L.Ed.2d 585 (1990). It may be true, therefore, that a reciprocity standard which included post-optometry school education and experience would also measure competency to practice optometry. Nevertheless, the court cannot say the standard adopted by the state of Alabama—four years of education in optometry—is unreasonable.

▇▇▇ Pierce questions how a standard can be reasonable which excludes someone as competent as he is. First, as stated above, the standard does not have to be accurate to a "mathematical exactitude." *City of New Orleans v. Dukes,* 427 U.S. at 303, 96 S.Ct. at 2517. Therefore, that the standard adopted does not in all cases measure competency precisely does not mean that the standard is unreasonable. Second, that the four-year

curriculum standard is a reasonable requirement for someone who is expected to practice optometry in a competent manner is fully supported by the record—and most tellingly by the fact that the optometry school which Pierce helped to form adopted a four-year curriculum program. In addition, the court finds compelling the Optometry Board's argument that the measure that Pierce would have the Board adopt—supplemental education and experience—would be difficult to implement because it is subjective and thus less capable of even and efficient application. *See, e.g., Chaney v. State Bar of California,* 386 F.2d 962, 964 (9th Cir.1967) (plaintiff complained that, because essay-type questions in admissions examinations were too subjective and open to abuse, state should use more objective "yes and no" test). Pierce has not indicated what reliable criteria and sources of information the Board should use to determine reliably when a person has sufficient supplemental education and experience. In formulating a rule, the state often has to pursue two goals which may be at odds with each other: the rule must be reasonably capable of measuring what is sought to be measured and yet it must also be reasonably capable of even and efficient application. The four-year curriculum standard obviously achieves both goals.

In any event, Pierce could still have demonstrated his competency even though he had attended only a three-year curriculum program. The 1975 reciprocity statute also allowed for reciprocity in cases where the applicant had completed and passed the national optometry examination. Pierce could have demonstrated his competency by taking the national examination, but he has elected not to. It is therefore evident that the issue is not really the four-year curriculum requirement but rather his belief that the state should use a reciprocity procedure which would assure him a license without having to endure an examination.[5]

---

**5.** In 1989, the state of Alabama amended its reciprocity statute further. Section 34–22–21 now provides as follows:

"Any person who has successfully passed a standard examination in optometry in any state of the United States or all parts of the

examination given by the national board of examiners in optometry and is the holder of a certificate to that effect, issued by the board of such state, or by said national board, and who has a current license to practice optometry in any state in the United States, and has con-

#### 3.

■ Pierce appears to challenge the notion of state reciprocity as well—that is, the state's requirement that the standards under which the applicant secured his license from the other state must at least equal those prevailing in Alabama at the time of the application. In *Schumacher v. Nix*, the Third Circuit Court of Appeals recognized such reciprocity provisions as rationally related to a legitimate state interest. The appellate court was confronted with a reciprocity provision for admission of attorneys from other states and wrote that "such reciprocity provisions are a valid exercise of state power, because they help ease the burdens of relocation for resident attorneys seeking admission to the bars of other states." 965 F.2d at 1270. *See also Hawkins v. Moss*, 503 F.2d 1171 (4th Cir.1974), *cert. denied*, 420 U.S. 928, 95 S.Ct. 1127, 43 L.Ed.2d 400 (1975). This same reasoning applies to Alabama's reciprocity provision for optometrists.

#### 4.

■ Finally, Pierce claims that the grandfather clause—which exempts from the new requirements those who held valid licenses in 1975—is arbitrary in the distinction it draws. In *City of New Orleans v. Dukes*, the Supreme Court was confronted with a municipal ordinance which contained a grandfather clause excluding certain existing pushcart vendors from the ordinance's overall ban on push-cart vendors. The Court rejected the argument that "the 'grandfather provision,' allowing the continued operation of some vendors was a totally arbitrary and irrational method of achieving the city's purpose." 427 U.S. at 305, 96 S.Ct. at 2517.

The Court explained that "rather than proceeding by the immediate and absolute abolition of all pushcart food vendors, the city could rationally choose initially to eliminate vendors of more recent vintage." *Id.* The Court then quoted from *Katzenbach v. Morgan*, 384 U.S. 641, 657, 86 S.Ct. 1717, 1727, 16 L.Ed.2d 828 (1966), as follows:

> "(W)e are guided by the familiar principles that a 'statute is not invalid under the Constitution because it might have gone farther than it did,' *Roschen v. Ward*, 279 U.S. 337, 339, 49 S.Ct. 336 [336], 73 L.Ed. 722, that a legislature need not 'strike at all evils at the same time,' *Semler v. Dental Examiners*, 294 U.S. 608, 610, 55 S.Ct. 570, 571, 79 L.Ed. 1086, and that 'reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind,' *Williamson v. Lee Optical Co.*, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563."

427 U.S. at 305, 96 S.Ct. at 2517–18. This same reasoning applies here. The state of Alabama rationally decided to phase in its new requirements for licensing of optometrists by applying them to only new applicants for licenses. "Indeed, it has been held that where a state upgrades a professional license requirement, due process may *require* a 'grandfather provision.'" *Nordgren v. Hafter*, 789 F.2d 334, 339 (5th Cir.) (emphasis in original) (citing *Berger v. Board of Psychologist Examiners*, 521 F.2d 1056, 1063 (D.C.Cir.1975)), *cert. denied*, 479 U.S. 850, 107 S.Ct. 177, 93 L.Ed.2d 113 (1986).

■ Pierce further argues that, although the grandfather clause may not be arbitrary on its face, it has been applied in an arbitrary manner to him. Pierce contends that the temporary license he received as a teacher in

---

ducted an ethical professional practice of optometry for at least one year may, at the discretion of the board, upon the payment of the amount of the regular examination fee, take the standard examination provided in this chapter, and upon passing said examination be registered as qualified to practice optometry in this state."
The new statute deletes the following requirements: (1) "that the standard of qualifications and examination under which he secured such certificate to practice was at least as high as that prevailing in Alabama at the time his making

application to be so registered;" (2) "that said applicant has not failed in an examination in optometry before the state board of optometry or the Alabama board of optometry;" and (3) "that the state from which such applicant comes grants like privileges to persons who have passed the examination of the board." In their place, the new statute simply requires that the applicant pass the state's optometry examination. There is no evidence that Pierce has sought reciprocity under the new statute—that is, that he has taken and passed the state optometry examination.

1970 should have qualified him to for grandfather status in 1975 under the new law. The court must reject this argument. The evidence credibly reflects that the Optometry Board issued only temporary teaching licenses to Pierce and other teachers at the University of Alabama at Birmingham's School of Optometry; the licenses were not regular ones which would have entitled the holders to grandfather clause status if still valid in 1975. Indeed, the evidence reflects that some teachers obtained separate regular licenses and were thus eligible to be grandfathered in. Pierce, for whatever reason, chose not to obtain a regular license under the pre–1975 law, which required only a three-year curriculum program, and thus he was not eligible under the grandfather clause.[6] Pierce notes that under his teaching license he was able to practice optometry. However, practice of optometry under the teaching license was limited to that connected with the school. Teaching licenses were therefore unlike regular licenses in that the those possessing the former could practice optometry only under the supervision of the school. Moreover, that the license Pierce received was different from a regular license is reinforced by the fact the 1975 law codified and formalized the distinction.

Pierce suggests that the Optometry Board had no authority to issue to him and the other teachers at the University of Alabama at Birmingham a temporary teaching license in 1970 and thus that the Board may have violated state law when it did so. The court is, however, convinced that the Board issued the temporary licenses in 1970 in the good faith belief that it had such authority

under state law. In any event, a violation of state law by the Optometry Board would not constitute a federal cause of action. *Ray v. Birmingham City Bd. of Educ.*, 845 F.2d 281 (11th Cir.1988); *Harris v. Birmingham Bd. of Educ.*, 817 F.2d 1525, 1527 (11th Cir.1987).

Pierce further suggests that there is at least one, and there may be two, cases where the Optometry Board has granted reciprocity to an applicant who did not meet all qualifications for reciprocity. The mere misapplication of, or departure from, from a state law, however, would not establish an equal protection violation absent proof that the Optometry Board acted with discriminatory intent. As the Eleventh Circuit Court of Appeals stated in *E & T Realty v. Strickland*, 830 F.2d 1107, 1114 (11th Cir.1987), *cert. denied*, 485 U.S. 961, 108 S.Ct. 1225, 99 L.Ed.2d 425 (1988),

"'A construction of the equal protection clause which would find a violation of federal right in every departure by state officers from state law is not to be favored.' *Snowden [v. Hughes]*, 321 U.S. [1,] 11–12, 64 S.Ct. [397,] 403 [88 L.Ed. 497] [ (1944) ]. The requirement of intentional discrimination prevents plaintiffs from bootstrapping all misapplications of state law into equal protection claims. 'Probably no law contrived by man for his own governance ever has had or will be enforced uniformly and without exception. But the Constitution does not demand perfection.' *Standard Oil Co. v. Boone County Bd. of Supervisors*, 562 S.W.2d 83, 84 (Ky.1978) (quoting *City of Ashland v. Heck's, Inc.*, 407 S.W.2d 421, 424 (Ky.1966)). The equal protection clause requires no more than that state

---

**6.** The pre–1975 law—§ 200 of Title 46 of the 1958 Recompiled Code of Ala.—provided as follows:

"The state board of optometry may in its discretion issue a license to practice optometry in this state to a legal, ethical and competent practitioner of optometry who removes to Alabama from another state or territory of the United States, *whose standard of requirement is equal to that of Alabama, . . .*, provided such applicant shall present a certificate from the board of optometry or a like board of the state or territory from which he removes, certifying . . . that *at the time of granting such a license the standard of requirements was equal to that of Alabama. . . .*"

(Emphasis added.) Section 197 of the Title 46 further provided:

"Every person desiring to commence the practice of optometry, except as otherwise provided, shall take the standard examination provided in this chapter and fulfill the other requirements as herein provided. Such applicant must be twenty-one years of age, or over, a citizen of the United States and of good moral character, must be a graduate of an accredited high school and *must have completed the course of study in an approved school, college or university of optometry, which requires at least three years course of study. . . .*"

(Emphasis added.)

decisionmakers applying a facially neutral state not intentionally discriminate."

Pierce has not claimed intentional discrimination—for example, that he was denied a license because of his race or sex or some other impermissible characteristic or act—in this litigation.

## C. The Optometry Board's Defenses

The Optometry Board has offered two affirmative defenses to Pierce's lawsuit. Although the court need not address these defenses because Pierce's claim to a regular license lacks merit any way, the defenses will be addressed in order to provide a complete record.

■ First, the Board argues that this lawsuit is time-barred. The Board contends that this cause of action arose in 1978 when the Board denied Pierce's first application for reciprocity and that his second application in 1986 could not revive the action. If the Board's reasoning is correct then this lawsuit would be time-barred because it would not have been brought within the required two-year limitations period for actions under § 1983. *Lufkin v. McCallum,* 956 F.2d 1104 (11th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 326, 121 L.Ed.2d 246 (1992); *Jones v. Preuit & Mauldin,* 876 F.2d 1480 (11th Cir. 1989) (en banc). The court does not, however, agree with the Board's characterization. Because the second, 1986 application and its rejection were a separate and discrete event, they gave rise to a new limitations period and thus this lawsuit was timely.

■ The Board further argues that, even if Pierce could have satisfied the four-year curriculum requirement, it would still have not granted him reciprocity. The Board relies on the principle established in *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), that, in determining whether there is a constitutional violation warranting relief, a court must consider not only wheth-

er the violation was a substantial motivating factor in the decision reached but also whether the decision-maker would have reached the same decision even in the absence of the violation. The Board contends that, even in the absence of the four-year curriculum requirement, reciprocity would not have been appropriate because Oregon did to offer "like privileges" to optometrists from Alabama, as required by the reciprocity statute. 1975 Code of Ala. § 34–22–21. The court agrees with the Board that Oregon's reciprocity statute required that applicants pass a "practical examination" not required by Alabama's statute. The court is also convinced that, even in the absence of the four-year curriculum requirement, the Board would still have denied Pierce a regular license because Oregon did to offer "like privileges." [7]

An appropriate judgment will be entered.

## JUDGMENT

In accordance with the memorandum opinion entered this date, it is the ORDER, JUDGMENT, and DECREE of the court:

(1) That judgment is entered in favor of the defendants and against plaintiff John R. Pierce, with plaintiff Pierce taking nothing by his complaint; and

(2) That costs are taxed against plaintiff Pierce, for which execution may issue.

DONE, this the 2nd day of March, 1993.

---

**7.** Admittedly, what is meant by the term "like privileges" in Alabama's reciprocity statute is open to debate. Nevertheless, the court is convinced that the interpretation and application that the Board has given the term is reasonable and was done in good faith. *See Chevron v.*

*Natural Resources Defense,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984) ("We have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer").